STATE, EX REL. RICHARD C. HUNTER, ATTORNEY GENERAL, APPELLEE, V. FOX BEATRICE THEATRE CORPORATION ET AL., APPELLANTS.

275 N. W. 605

FILED OCTOBER 22, 1937. No. 30203.

*Wright, Wright & Kennedy* and *John C. Mullen,* for appellants.

*Richard C. Hunter, Attorney General, Paul P. Chaney* and *Francis V. Robinson, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

ROSE, J.

This is a suit in equity brought in the district court for Gage county by the state of Nebraska on the relation of the attorney general, plaintiff, to perpetually enjoin Fox Beatrice Theatre Corporation, a corporation, and Lewis B. Sponsler, its manager, defendants, from operating a lottery known as "bank night" in connection with the Fox and the Rivoli theaters, motion picture houses in Beatrice. Defendants denied that "bank night," as operated by them, is a lottery. That issue was properly raised by the pleadings. Upon a trial of the cause, the district court found that "bank night" is a lottery and granted an injunction forbidding further operation of it. Defendants appealed.

The question determined by the district court is the same on appeal: Is the device called "bank night" a lottery? The constitutional provisions and the statutes making lotteries unlawful are plain in meaning. An amendment to the Constitution in 1934 provides: "The legislature shall not authorize any games of chance, lottery or gift enterprise," with a limitation not applicable to the present inquiry. Const. art. III, sec. 24; Comp. St. Supp. 1935, p. 14. A section of the lottery statute provides:

"Whoever opens, sets on foot, carries on, promotes, makes or draws, publicly or privately, any lottery or scheme of chance, of any kind or description, by whatever name, style or title the same may be denominated or known * * * shall be fined in any sum not exceeding five hundred dollars." Comp. St. 1929, sec. 28-962.

This legislation was enacted in a form to include every scheme operating as a lottery without regard to form or

kind. There is no material fact in dispute. The nature and operation of "bank night" are explained in a stipulation of facts. It is conducted by defendants and their agents in connection with Fox and Rivoli motion picture theaters. A registration book was personally presented to 5,000 adult persons in and around Beatrice, who, without payment of any money, wrote their names therein, each line giving the address and identifying the registrant by a permanent number. Thereafter the book was open to the adult public for registration in the outer lobby of the Rivoli theater behind the ticket seller's booth where there was notice that neither purchase of a theater ticket nor attendance at the theater was required as a condition of registration. Thereafter the registration increased to more than 10,000 names. Defendants advertised by oral and printed announcements that money would be paid at the Rivoli theater to a registrant on each "bank night," being Tuesday night of each week. The prize winner is determined by chance. Cards an inch square, each bearing the number of a registrant, are placed in a receptacle containing the numbers of all registrants. One card is drawn from the receptacle at random on the stage at 9:00 o'clock on "bank night." It identifies the winner, whose name is announced inside and outside of the theater. If the winner appears in person within two minutes, the award is $25. If he does not so appear, the drawing is futile and the prize is added to the prize for the succeeding "bank night." If the prize winner is outside of the theater, admission thereto is free. The plan abounds in what amounts to emphatic assurance to the public that registration is free and that there is no consideration for the prize offered. This feature of the plan has prominence in the advertisements of defendants and in the stipulation of facts.

No attempt is herein made to give intricate details of "bank night." The foregoing outline is sufficient for a determination of the appeal in view of the frankness and clearness with which counsel for both sides have presented the controversy. The "bank night" system, including the

elements of chance, prize and consideration, was taken from its literary vestments and its real nature as a lottery exposed in its nakedness less than a year ago in *State v. Fox Kansas Theatre Co.*, 144 Kan. 687, 62 Pac. (2d) 929. That case is supported by the great weight of authority and is also reported in 109 A. L. R. 698, where the entire plan is shown in detail, including its origin, and where many cases are considered. By the judgment in that case, the Fox Kansas Theatre Company lost its corporate charter in Kansas for operating a lottery called "bank night." Cases of a similar nature are collected in 103 A. L. R. 866; 57 A. L. R. 424; 48 A. L. R. 1115.

A lottery must contain three elements—prize, chance and consideration. The attorney general argues that all three are present in "bank night" and cites cases in support of his position. Defendants concede what the scheme shows on its face—prize and chance, and the sum of their defense is that consideration is lacking and that the plan is a lawful and successful one to advertise the theater and increase the attendance. Cases supporting that view are also cited.

Is consideration an element of a lottery in "bank night?" Prize winners are limited to registrants. Registration is not necessary to admission to a theater by ticket. The hope of a prize was the inducement to register. Registration meant nothing to registrants but eligibility for a prize. The offer of a prize increased attendance on "bank night" and earnings of defendant, without regard to the merit of the entertainment. The general understanding of chance for a prize is explained by the large number of registrants. Registered buyers of tickets bought more with their purchase money than the privilege of attending motion picture shows in a theater, notwithstanding assertions to the contrary. They bought a chance, while in the theater itself, to be beneficiary in a drawing for a prize there, where it could be claimed within two minutes. They made a contribution to increased income out of which a prize could be paid, a fund created by many to be drawn by the holder

of a single lucky number on a tiny card. This contribution, under the practical operation of "bank night," is the consideration actually paid by the registered ticket holders for a chance for a prize and it is no less effective for that purpose because large numbers of registrants do not pay for theater tickets or occupy seats at the drawing. The prize offered to a registrant without a theater ticket, if he can personally claim it within two minutes after the drawing, though outside at the time, is a cloak to hide an evil design and to evade or cheat the law. "Bank night" as operated by defendants includes all the evils of an ordinary lottery, aggravated, as those evils are, by the appearance of innocence. Its tendency is to draw people without tickets in crowds in front of theaters for something they did not buy or earn, a place of idleness. It encourages in men and women the gambling instinct and the propensity to sustain life on the industry and earnings of others. Idleness, pauperism and crime are some of its bitter fruits. It helps to destroy the initiative essential to individual livelihood and good citizenship. It increases the burdens of law enforcement which fall on the people generally throughout the state, as shown by court records. The lottery laws are directed against these and other evils and it is the duty of courts to give effect to the remedies when properly invoked by prosecuting officers.

The district court made no mistake in finding that defendants are conducting a lottery and in perpetually enjoining them from doing so.

AFFIRMED.