STATE v. SCHUBERT THEATRE PLAYERS COMPANY.[1]

September 30, 1938.

No. 31,387.

[1]Reported in 281 N. W. 369.

*Paul C. Thomas,* for defendant.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *M. F. Kinkead,* County Attorney, and *James F. Lynch* and *William F. Desmond,* Assistant County Attorneys, for the State.

*John P. Devaney, Louis B. Schwartz,* and *Samuel H. Maslon, amici curiae,* filed a brief on behalf of Allied Theatre Owners of the Northwest, Inc.

HOLT, JUSTICE.

The trial court overruled defendant's demurrer to the information, and at the request of counsel for both parties the court, pursuant to 2 Mason Minn. St. 1927, § 10756, certified to this court for decision this question: Does the information as filed charge a public offense under the lottery laws of the state of Minnesota as set out in § 10209, Mason Minn. St. 1927?

There is no need of setting out the lengthy information. The offense with which defendant is charged is that of operating a lottery. 2 Mason Minn. St. 1927, § 10209, declares a lottery a felony, and defines it thus:

"A lottery is a scheme for the distribution of property by chance, among persons who have paid or agreed to pay a valuable consideration for the chance, whether it shall be called a lottery, raffle, gift enterprise, or by any other name, and is hereby declared unlawful and a public nuisance."

The scheme here involved is called "Ten-O-Win." It is conceded that the information adequately alleges a scheme to award a prize by chance or lot. The real point of the appeal is that the information fails to aver that the participants in the chance paid or agreed to pay a valuable consideration therefor. It is contended that it contains averments showing that not only those who paid for admission to the theater obtained numbered colored coupons entitling the holders to a chance for the prize to be drawn and announced on the stage of the theater, but also that those who came to the lobby of the theater and requested such numbered colored coupons obtained the same free, and that when the winning coupon was drawn and announced from the stage such winning coupon was simultaneously announced in the lobby and outside the theater, and that the winner, whether inside or outside the theater, would obtain the prize provided it was claimed in the theater within five minutes after its announcement, and to make such claim the holder of the winning coupon was admitted free if he or she was in the lobby or outside the theater. Of course a person may distribute or give away his property or money by lot or chance provided he does so without a consideration. But the moment some pay for the chance of participating in the drawing of the prize it is a lottery under the law, no matter how many receive a chance also to participate free and without any consideration. Whether the lottery is so conducted as to be profitable to the operator thereof is no concern of the law. It is safe to say that a jury would have no difficulty to find in this "Ten-O-Win" consideration paid by those coupon holders who gained entrance to the theater by the admission fee, that fee being looked to by the operator not only to furnish the prize, but a profit which he could not hope for in the absence of the "Ten-O-Win" scheme. And, as far as the free distribution of coupons to participate upon request, we apprehend the jury could readily find that to be an attempted device to evade or circumvent the law. There is no substantial difference between the lottery described in this information and the "Bank Nite" operated strictly according to the instructions of the originator of that scheme involved in State v.

Stern, 201 Minn. 139, 275 N. W. 626, which was held to justify a jury in finding a valuable consideration paid for the chance to obtain the prize. We there approved as sound the decision in Commonwealth v. Wall (Mass.) 3 N. E. (2d) 28, 30. To what was there quoted we add this particularly pertinent observation:

"A game does not cease to be a lottery because some, or even many, of the players are admitted to play free, so long as others continue to pay for their chances. * * * So here the test is not whether it was possible to win without paying for admission to the theatre. The test is whether that group who did pay for admission were paying in part for the chance of a prize."

To the cases considered in the Stern case and sustaining the conclusion there reached, we add the following recent decisions: Grimes v. State, 235 Ala. 192, 178 So. 73; State v. Dorau, 124 Conn. 160, 198 A. 573; Barker v. State, 56 Ga. App. 705, 193 S. E. 605; State v. Wilson (Vt.) 196 A. 757; Cole v. State, 133 Tex. Cr. 548, 112 S. W. (2d) 725. The writer in the Stern case erroneously placed Maughs v. Porter, 157 Va. 415, 161 S. E. 242, among the authorities which, in civil proceedings, held a gift enterprise not a violation of the lottery law. The ruling was to the contrary. In State ex rel. Hunter v. Fox Beatrice Theatre Corp. 133 Neb. 392, 275 N. W. 605, "Bank Night" as there operated was enjoined as a lottery even though the chance to win the prize was open to all registrants regardless of whether they paid admission to the theater or not. The court said [133 Neb. 396]:

"The prize offered to a registrant without a theater ticket, if he can personally claim it within two minutes after the drawing, though outside at the time, is a cloak to hide an evil design and to evade or cheat the law. 'Bank night' as operated by defendants includes all the evils of an ordinary lottery aggravated, as those evils are, by the appearance of innocence. Its tendency is to draw people without tickets in crowds in front of theaters for something they did not buy or earn, a place of idleness. It encourages in men and women the gambling instinct and the propensity to sustain

life on the industry and earnings of others. Idleness, pauperism, and crime are some of its bitter fruits. It helps to destroy the initiative essential to individual livelihood and good citizenship. It increases the burdens of law enforcement which fall on the people generally throughout the state, as shown by court records. The lottery laws are directed against these and other evils and it is the duty of courts to give effect to the remedies when properly invoked by prosecuting officers."

We think upon the facts alleged in the information a jury will have no difficulty in finding a consideration paid for the chance to win the prize. An offense is stated.

Affirmed.

LORING, JUSTICE (dissenting).

Stated concisely, the majority opinion puts the test as to whether the acts charged constitute a lottery as follows: "The test is whether that group who did pay for admission were paying in part for the chance of a prize." Commonwealth v. Wall (Mass.) 3 N. E. (2d) 28, 30. With that test I agree. But I find nothing in the information that charges that a part of the charge for admission was for a chance on the prize, nor do I find any facts alleged from which it might be properly inferred that the right to participate by those outside the theater was a cloak or device to evade the law or that free participation was not in fact a reality. On the contrary, it is charged that the scheme was used to attract patronage and to increase the revenue of the theater. No doubt it did so. Under the decisions in Commonwealth v. Wall (Mass.) 3 N. E. (2d) 28, and State v. Eames, 87 N. H. 477, 183 A. 590, 592, this did not constitute a price paid by the participants. The greater attendance furnished the motive for offering the prize as distinguished from the consideration for so doing. 1 Williston, Contracts (Rev. ed.) § 111. Under the allegations of this information people had the same right to participate although they were outside, and there is no assertion that their participation was not in fact free. If that be so it becomes a strain upon our reasoning powers to conclude that those who preferred the convenience of a seat and the entertainment of-

fered were paying in part for the chance of participating. That many people did so and thus increased the revenues could scarcely be held to make their admission fee a payment in part for a chance when they could have had the same chance by staying outside or anywhere within five minutes' call. "The price must come from participants in the game in part at least as payments for their chances * * * the indirect advantage to the theatre of larger attendance is not in itself a price paid by participants." Commonwealth v. Wall (Mass.) 3 N. E. (2d) 30. I see no logic in the theory of mass or collective consideration advanced in some of the cases cited by the majority but rejected by the supreme court of Massachusetts.

The majority concede that a person may legally give away his property by lot or chance. The vice is in the payment of a consideration for the chance. In State v. Wilson (Vt.) 196 A. 757, the Vermont case relied upon by the majority, the name of the winner was called from the aisle of the theater and only one minute given for a person outside to get in and claim the prize. The court said [196 A. 762]: "In fact, under these circumstances, the chance of successful participation without being inside the theatre might well be so slight as to be almost, if not quite, illusory." Thus it will readily be seen that in the Vermont case the whole scheme was a cloak or device to conceal a lottery. In practice one had to buy a seat in order to participate.

In the case at bar we are dealing with a criminal statute, and definitely there must be a consideration paid for the particular chance allotted to the purchaser of a ticket. Commonwealth v. Wall, *supra*. It seems to me that the inferences to be drawn from the allegations now before us indicate that participation was in fact free as held in State v. Eames, 87 N. H. 477, 183 A. 590, 592. Construing the allegations most unfavorably to defendant, they are yet consistent with innocence.

Commonwealth v. Wall, *supra*, was before the court on appeal after conviction, and no question was raised as to whether the complaint charged an offense. The court was there weighing the evidence to determine what inferences might properly be drawn by the

jury. Here we have no allegation that the price paid for a ticket was in part for a chance in the drawing, or that those inside had, or believed they had, a better chance to win than those outside and that they paid their money for that better chance. There is no allegation that free participation by those outside was not a reality. On the face of the information the inferences to be drawn are that the criminal elements are absent. In short, the facts pleaded are consistent with innocence, and hence the information does not charge a public offense. In State v. Erickson, 81 Minn. 134, 136, 83 N. W. 512, this court said:

"The proper test by which the sufficiency of a criminal accusation is to be determined is whether the essential and ultimate facts pleaded are consistent with the innocence of the person accused, or, on the other hand, inconsistent with any view but of his guilt; and if the facts so pleaded, taken together, are reconcilable with the innocence of such accused party, the indictment cannot be held to allege a criminal offense."

Measured by this test this information must fall. A copy of the information is incorporated in a marginal note.[2] I think the question certified should be answered in the negative.

GALLAGHER, CHIEF JUSTICE (dissenting).
I agree with the views expressed by Mr. Justice Loring.

PETERSON, JUSTICE (dissenting).
I concur in the dissent upon the ground that the indictment is bad because the allegations could be true and the accused still be innocent. See State v. Isaacson, 155 Minn. 377, 193 N. W. 694. It alleges that the accused distributed the prize by chance either upon or without consideration. If the distribution was actually without consideration, no offense was committed.

---

[2]"AMENDED INFORMATION.
"To the Hon. District Court, Ramsey County, Minnesota:
"M. F. KINKEAD, County Attorney for said County, hereby informs the Court that on or about the 15th day of March, 1937, in the City of St. Paul, Ramsey County, Minnesota, Schubert Theatre Players Company, a corpo-

ration of the State of Delaware, committed the crime of Lottery, as follows: Then and there being, did wrongfully, unlawfully, and feloniously contrive and operate a certain lottery or scheme commonly called 'Ten-O-Win' at the Lyceum Theatre in St. Paul, Minnesota, for the distribution of money by chance among persons who are the holders of numbered coupons of varied colors which they obtain either upon the purchase by them of a ticket of admission to the Lyceum Theatre or free upon request and without charge by persons who are not patrons but who have pursuant to publicity actually given said plan by the operators presented themselves at the theatre and have requested one of said colored tickets, that thereafter and upon the stage of said theatre a number is chosen by chance by the use of a device which indicates a particular number of a particular color and designates the sum in cash within certain limitations fixed by the defendant operator to be received by the holder of one of said tickets, bearing the color and number indicated by the use of the wheel or device hereinbefore referred to which also designates, what if any, portion of a so-called 'Jack Pot', created and replenished from time to time by said defendant corporation in a specified manner in connection with the operation of 'Ten-O-Win', the holder of said winning ticket would or could receive by being actually present in said Lyceum Theatre as a patron, at the time of the determination of the winner as hereinbefore provided, or by presenting himself and making his presence known in the theatre or in the lobby thereof within five minutes of the drawing itself and the announcement to the public made by the defendant corporation, which said announcement is made in the lobby and on the outside of the theatre giving the number and color of the winning ticket and to claim said prize, if the winner is on the outside or in the lobby of said theatre and to facilitate collections thereof, and for that purpose admission is provided free by the defendant to the holder of the winning coupon; that said scheme or device was designed and operated by said defendant corporation for the purpose of advertising said Lyceum Theatre and attracting patrons thereto and thereby increasing the revenue of said theatre, and said scheme or device did in fact advertise said theatre and attract patrons thereto and did in fact increase the revenue of said defendant corporation realized from the operation of said Lyceum Theatre, a more particular description of which said lottery or scheme being to this informant unknown, contrary to the statutes in such case made and provided and against the peace and dignity of the State of Minnesota.

"Dated April 1, 1937.

"M. F. KINKEAD,
"County Attorney, Ramsey County."