STATE, EX REL. RICHARD C. HUNTER, ATTORNEY GENERAL, PLAINTIFF, v. OMAHA MOTION PICTURE EXHIBITORS ASSOCIATION ET AL., DEFENDANTS.

297 N. W. 547

FILED APRIL 9, 1941. No. 30189.

*Walter R. Johnson*, Attorney General, and *Clarence S. Beck*, for plaintiff.

*Irvin C. Levin* and *Richard E. O'Brien*, for defendants.

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ., and MEYER, District Judge.

CARTER, J.

On June 26, 1937, a temporary injunction was granted by this court enjoining the defendants herein, and others, "from in any way or manner carrying on, promoting or conducting or permitting or allowing or suffering within their places of business or in connection with their operation of Omaha motion pictures, the scheme, plan and system commonly referred to as 'Bank Night' now being carried on and conducted by defendants in connection with their operation of motion picture theatres in Omaha, Douglas county, Nebraska." On June 10, 1940, a suggestion of contempt was filed by W. W. Wenstrand, city solicitor of the city of Omaha, which called this court's attention to the fact that certain of the defendants were carrying on and promoting a gift enterprise or lottery, commonly referred to as "Prosperity Club," in violation of the injunction order entered against them by this court. A citation for contempt was issued, the defendants served with process and the answers of defendants filed in due time. The attorney general thereupon moved for a judgment on the pleadings, which motion is now before the court for decision.

It is conceded by the pleadings that "Prosperity Club" operates in substantially the following manner: Membership in the "Prosperity Club" is obtained by registration upon a yellow card without paying any money or purchasing an admission ticket. Membership cards are numbered and a corresponding number is deposited in a permanent receptacle from which the winning number is selected by lot. In order to be eligible for the award which is made each Wednesday night at 9 p. m., the member must register on a white card on the day of the drawing. The white cards are obtainable only in the theatres sponsoring the club without the payment of money or the purchase of a ticket. Only a member who has filled out a yellow card, thereby entitling his number to be placed in the permanent receptacle from which the drawing is made, and who has registered on the day of the drawing by filling out a white

card at one of the participating theatres, is eligible to receive the specified prize which is in no event less than $500. It will be noted that the privilege to enter the contest without the purchase of a ticket or other cost is offered to every one.

It is fundamental in order for a scheme to be a lottery that three elements must exist. First, there must be a distribution of property by chance, commonly referred to as a prize. Second, the prize must be awarded by lot or chance. Third, the participants must have paid consideration for the chance of winning the prize. Unless all three elements are present, the lottery laws have no application. In the present case the first two elements are conceded to be present. The question is whether the element of consideration exists.

An amendment to the Constitution in 1934 provides: "The legislature shall not authorize any games of chance, lottery, or gift enterprise." Const. art. III, sec. 24. The legislature has defined a lottery in the following language: "Whoever opens, sets on foot, carries on, promotes, makes or draws, publicly or privately, any lottery or scheme of chance, of any kind or description, by whatever name, style or title the same may be denominated or known * * * shall be fined in any sum not exceeding five hundred dollars." Comp. St. 1929, sec. 28-962. We said in *State v. Fox Beatrice Theatre Corporation,* 133 Neb. 392, 275 N. W. 605: "This legislation was enacted in a form to include every scheme operating as a lottery without regard to form or kind." When the question presented is one of enforcing criminal responsibility, or of refusing to aid in a transaction alleged to be within the statutory prohibition, the courts will ordinarily construe liberally the provisions relating to lotteries so as to include all schemes which appeal to the gambling propensities of men. See 38 C. J. 305. It would be difficult to state with exactness all the plans or schemes that fall within the statutory definitions of a lottery. We shall not attempt to do so. The term "lottery" is generic in nature and best left without exact definition, because "No sooner is it defined by a court than ingenuity

evolves some scheme within the mischief discussed, but not quite within the letter of the definition given." *People v. McPhee,* 139 Mich. 687, 103 N. W. 174. Generally speaking, it is a scheme which tends to induce one to pay or agree to pay a valuable consideration for a chance to draw a prize.

Ordinarily, a person mentally competent, who is not trying to defraud his creditors, may give away his property as he pleases. Even if the gift is by chance, it is immaterial so long as he alone can lose by the transaction. It is only when other people are induced to give up consideration in the hope of obtaining greater returns that the law becomes concerned in protecting people from dissipating their money by gambling against odds which usually are not fully appreciated. If every participant spends money or contributes something of value for a chance to win a prize, consideration is clearly present. We held in the "Bank Night" cases that consideration may still be present where all the participants are not required to pay a consideration. *State v. Omaha Motion Picture Exhibitors Ass'n,* 133 Neb. 89, 274 N. W. 397; *State v. Fox Beatrice Theatre Corporation,* 133 Neb. 392, 275 N. W. 605. See, also, *Glover v. Malloska,* 238 Mich. 216, 213 N. W. 107; *Brooklyn Daily Eagle v. Voorhies,* 181 Fed. 579; *Society Theatre v. Seattle,* 118 Wash. 258, 203 Pac. 21. The present scheme does not require any one to pay a consideration. Such was the case also in the "Bank Night" cases. The practical operation shows, however, that more people do purchase tickets to the theatres and that the profits of the business increase without a change in the merit of the entertainment. The hope of a prize is the motivating inducement to the larger attendance which results in larger profits. Buyers of tickets buy more than a ticket to the show itself. They make it possible by increased income for defendants to pay a prize. This contribution is the consideration required to make the scheme a lottery under the statute, even though many may participate without purchasing a ticket. Advertisements to the effect that membership and eligibility are free and that

the gratuitous giving of awards is a good-will gesture and requires no consideration on the part of those participating are nothing more than an attempt to mask the true character of the scheme for the purpose of circumventing the injunction order heretofore issued by this court. The "Prosperity Club" scheme as operated by the defendants includes every evil of an ordinary lottery, camouflaged as it is by the appearance of innocence and respectability. Its purpose is not to give away the prize as a gift. It is conceived in the hope of financial gain. It is merely an inducement to try one's luck in a gamble for comparatively large stakes. As a disguised lottery, pretending that it has all the virtues of good advertising, it attracts thousands of persons who would have nothing to do with it as an unmasked lottery.

"A game does not cease to be a lottery because some, or even many, of the players are admitted to play free, so long as others continue to pay for their chances. The court pointed out that the test was not whether it was possible to win without paying for admission to the theatre, but whether that group who did pay for admission were paying in part for the chance of a prize." *Iris Amusement Corporation v. Kelly,* 366 Ill. 256, 8 N. E. (2d) 648. And in *State v. Eames,* 87 N. H. 477, 183 Atl. 590, the court said: "The problem presented by 'Bank Night' and similar schemes is to determine whether it is an evasion of the statute or an avoidance of it, and this question is essentially one of fact. In answering this question we do not propose to close our eyes to reality. The test by which to determine the answer to this question is not to inquire into the theoretical possibilities of the scheme, but to examine it in actual, practical operation. If, as the state contends in its brief (although this contention does not appear to be borne out by the agreed facts), 'the great majority of people pay for such privilege,' then it is an evasion and as such is not to be countenanced." See, also, *State v. Lipkin,* 169 N. Car. 265, 84 S. E. 340.

The element of price or consideration is present. As was said in *Commonwealth v. Wall,* 295 Mass. 70, 3 N. E. (2d)

28, we should look at this thing realistically and sensibly. We know that those within the theatre pay for any chance any one outside may have to win. We know also that a registered member, who does not buy a ticket to the theatre, must sign the white card on the day of the drawing, obtainable only in the lobby of a participating theatre. The object of the defendants is to fill the theatre, not the lobby. The requirement that a member present himself in the theatre lobby on the day of the drawing to sign a card in order to be eligible for the drawing is merely an ingenious device to circumvent this court's order without losing the benefit that accrues from a careful nursing of mass gambling. The evils which our Constitution and laws attempted to guard against are all present. "There is the excitement of drawing a lucky number with its attendant exultation for one fortunate individual; there is depression and disappointment for a thousand losers, many of whom must think enviously of what they could do with so much money had they won it, and there is the constant temptation to continue to play in the hope of winning. We have thus created cupidity, envy, jealousy and temptation—the very things sought to be avoided by that enlightened public policy of most of the world which has outlawed lotteries." *Iris Amusement Corporation v. Kelly*, 366 Ill. 256, 8 N. E. (2d) 648.

A close examination reveals that the plan now before us is an evasion and not an avoidance of the law. Theoretical possibilities are not sufficient to overcome the practical effect of the plan. The contentions of the defendants are merely an advocacy that the letter of the law shall black out the spirit of the legislation.

An attempt has been made, after each decision of this court, to produce by the ingenuity of those who desire to profit from the gambling instinct to streamline the plan with a view of concealing by name and technical operation and other fallacious pretenses one or more of the elements necessary to make it a lottery, gift enterprise, or game of chance. The latest of these dressed up schemes bears the

glamorous title of "Prosperity Club." But on close inspection it is nothing more or less than a lottery with all its attendant vices and evils which our Constitution and laws have forbidden in language plain and clear.

It is evident to us that "Prosperity Club" was originated as a wilful and contumacious attempt to avoid the provisions of the injunctive order heretofore entered in this case. The defendants, the Omaha Motion Picture Exhibitors Association, William A. Singer, William Miskell, Sam Epstein, Ralph Goldberg, and Tri States Theatre Corporation, are hereby adjudged to be in contempt of this court in operating the plan commonly referred to as "Prosperity Club," and each of said defendants is hereby fined the sum of $200, to be paid into this court for the benefit of the county of Douglas, Nebraska, in accordance with the provisions of section 20-1072, Comp. St. 1929. Upon failure of the defendants to pay said sums into court, together with the costs of the suit, within 30 days from the entry of the final order of this court in this proceeding, the attorney general shall apply to this court for such orders as may be necessary to obtain a compliance therewith.

JUDGMENT ACCORDINGLY.

YEAGER, J., not participating.