STATE OF NEBRASKA EX REL. WILLIAM G. LINE, COUNTY ATTORNEY IN AND FOR DODGE COUNTY, APPELLEE, V. KENNETH GRANT ET AL., APPELLANTS.

75 N. W. 2d 611

Filed March 16, 1956. No. 33895.

*Sidner, Lee, Gunderson & Svoboda* and *Richards, Yost & Schafersman,* for appellants.

*Clarence S. Beck,* Attorney General, *Clarence A. H. Meyer,* and *William G. Line,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This action was brought by the State of Nebraska ex rel. William G. Line, county attorney, as plaintiff, seek-

ing to permanently enjoin defendants Kenneth Grant and Elno Grant, doing business as Grant Chevrolet Company, and their employees, from conducting an alleged lottery upon described premises in Fremont. The trial court forthwith issued a temporary injunction and defendants thereafter answered, denying generally and alleging that their scheme was not a lottery, since the element of consideration was not involved.

After hearing on the merits the trial court rendered judgment which found and adjudged that defendants were conducting a lottery and permanently enjoined the scheme. Defendants' motion for new trial was overruled and they appealed, assigning in effect that the judgment was not sustained by the evidence but was contrary thereto and contrary to law. We conclude that the assignments should not be sustained.

Citing State ex rel. Hunter v. Fox Beatrice Theatre Corp., 133 Neb. 392, 275 N. W. 605, and State ex rel. Hunter v. Omaha Motion Picture Exhibitors Assn., 139 Neb. 312, 297 N. W. 547, defendants conceded that in order for a scheme to be a lottery, it must contain the three elements of prize, chance, and consideration. They also conceded that their scheme contained the elements of prize and chance, but argued that it did not contain the element of consideration. The sole question then is whether or not, in the light of facts and applicable law, defendants' scheme contained the element of consideration in order to make it a lottery. Upon trial de novo we conclude that it did.

The undisputed evidence was substantially as follows: Defendants Kenneth Grant and Elno Grant were a partnership doing business as Grant Chevrolet Company on described premises in Fremont. They were new car dealers for Chevrolet and Cadillac Divisions of General Motors Corporation. They bought and sold new and used automobiles, trucks, and accessories, and operated a general service garage in connection with such business.

On Tuesday, February 15, and Wednesday, February 16, 1955, defendants placed advertisements in the Fremont Guide and Tribune, a legal newspaper in general circulation in Dodge County. Insofar as important here, the advertisements read: "It's Here—Fascinating Chevrolet Exhibits—1955 Chevrolet Featurama—Win a Kiddie Convertible—Free Fun For All.

"Fascinating Exhibits and Fun for the Entire Family. We're inviting everybody in town to come in and see our own personal 1955 auto show, the Chevrolet Featurama. We have gleaming, life-size exhibits of Chevrolet engineering features at work. We have exhibits you can actually operate yourself . . . and have fun operating. Also, we would like to invite you to take this opportunity to drive the 1955 Motoramic Chevrolet and experience its great new features on the road. So, come in soon . . . to the thrilling Chevrolet Featurama for 1955.

"Bring the children. They'll love a ride in the Chevrolet Kiddie Convertible. Here's a special feature to thrill the youngsters! The Chevrolet Kiddie Convertible is a miniature sidewalk-sized version of the 1955 Chevrolet. The car is mounted on a special base that gives an exciting ride effect. It's great fun for the children—they'll love a ride in the Chevrolet Kiddie Convertible.

"Free Drawing! Your child can win a Kiddie Convertible. Some lucky boys and girls are actually going to win Kiddie Convertibles. We're having two grand drawings, one on Thursday, Feb. 17 and another on Saturday, Feb. 19. Get in soon and enter your child's name!

"Come see the 1955 Chevrolet Featurama. Feb. 16, 17, 18 & 19—8:00 A. M. to 9:00 P. M. Daily. Grant Chevrolet Co."

Unless restrained, defendants intended to conduct the chance drawing of names registered at their place of business on typical registration cards. In that connec-

tion, it was necessary for persons registering to fill out a registration card giving their child's name, age, address, telephone number, and the year, make, and model of cars they were driving. The parents were supposed to complete and sign the registration card, but many children filled out such cards all by themselves.

A registration desk was located in about the center of defendants' new car showroom where there were several new Chevrolet cars and trucks, Chevrolet engineering exhibits, and promotional literature. Other products and services, including a Kiddie Convertible ride, and defendants' offices, were located in the immediate vicinity.

Registrants were not required to advance any money or make any purchases in order to register or to be present at the drawing in order to win. It was necessary for persons to enter defendants' new car salesroom and pass by the new Chevrolet automobiles, trucks, and Chevrolet engineering exhibits, in order to register, and the completed registration cards were deposited in a box at the registration desk. Winners were determined by chance drawings made from such registration cards, and prizes for the winners were to be as described in exhibits attached thereto. There were two prizes. Each was a child's Chevrolet Kiddie Convertible worth $60, to be awarded to children under 12 years of age. The purpose of conducting the scheme was to advertise defendants' business, induce people to come into their place of business, look at defendants' exhibits, and buy merchandise, and to generally stimulate defendants' business as a new car dealer.

In 34 Am. Jur., Lotteries, § 2, p. 647, it is said: "Where the term 'lottery' is not defined by a statute directed against it, it has been stated that a definition which includes as an element the evil which the statute was intended to prevent must be adopted."

On the other hand, as this court said in State ex rel. Hunter v. Omaha Motion Picture Exhibitors Assn.,

*supra:* " 'No sooner is it defined by a court than ingenuity evolves some scheme within the mischief discussed, but not quite within the letter of the definition given.' "

In Lucky Calendar Co. v. Cohen (N. J.), 117 A. 2d 487, a recent exhaustive opinion citing many authorities and involving facts comparable in all material respects with those here involved, the court said: "In deciding whether the facts in the case at bar constitute a lottery, we must resort to the accepted method of determining the meaning of a statute: we must look first to the mischief to be remedied and then to the means taken by the Legislature to achieve that end. * * * Where the Legislature has gone to such lengths as it has here to achieve a desired objective, we are bound in the process of statutory construction to give due weight to every word employed by it in an effort to give effect to the legislative intent."

It is in such manner that we are required to construe and apply our own clear all-inclusive Constitution and related lottery statutes in the light of authorities which involved comparable statutes, facts, and circumstances.

In that connection, Article III, section 24, Constitution of Nebraska, provides in part: "The Legislature shall not authorize any game of chance, lottery or gift enterprise * * *." An apparent exception follows, but it requires no discussion here except to say that such exception did not declare a new policy in this state with reference to lotteries or games of chance. State ex rel. Hunter v. The Araho, 137 Neb. 389, 289 N. W. 545.

Section 28-961, R. R. S. 1943, provides in part: "Whoever opens, sets on foot, carries on, promotes, makes or draws, publicly or privately, any lottery or scheme of chance, of any kind or description, by whatever name, style or title the same may be denominated or known; or by such ways and means exposes or sets to sale any house or houses, lands or real estate, or any goods or chattels, cash or written evidences of debt, or certifi-

cates of claims, or any thing or things of value whatever," shall be punished as provided therein.

Also, section 28-962, R. R. S. 1943, provides in part: "Whoever vends, sells, barters or disposes of any lottery ticket or tickets, order or orders, device or devices of any kind, for or representing any number of shares, or any interest in any lottery, or scheme of chance, or opens or establishes as owner or otherwise any lottery or scheme of chance in this state, or is in any way concerned in any lottery or scheme of chance, by acting as owner or agent in this state for or on behalf of any lottery or scheme of chance to be drawn, paid or carried on, either out of or within this state," shall be punished as provided therein.

Further, section 28-963, R. R. S. 1943, provides in part: "If any person shall by printing, writing, or in any other way, publish an account of any lottery or scheme of chance of any kind or description, to be carried on, held or drawn, either out of or within the State of Nebraska, by whatever name, style or title the same may be denominated or known, stating when or where the same is to be drawn, or the prizes therein or any of them, or any information in relation to such prizes or any of them, or the price of a ticket, show or chance therein, or where any ticket may be obtained, or in any way aiding or assisting in the same, or in any way giving publicity to such lottery or scheme of chance," shall be punished as provided therein.

Such sections of our statutes were originally enacted at the same time in 1873 and then became a part of our criminal code. Since that time they have illustrated the clear and unlimited all-inclusive restrictions which the Legislature, by constitutional mandate, has imposed upon the publication, promotion, and conduct of lotteries or schemes of chance, "of any kind or description, by whatever name, style or title the same may be denominated or known."

In the promotion and conduct of lotteries or schemes

of chance the elements of prize and chance are usually present because attractively desirable, and the only alternative in order to avoid condemnation as a lottery or scheme of chance is to attempt in some manner to eliminate or to attempt by some new artifice to conceal the element of consideration. That situation is presented in the case at bar.

Concededly, there are authorities supporting defendants' contention that the element of consideration is not present and the scheme is not a lottery unless the participants contribute money, property, or substantial time or services in return for the right to participate. Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338, 16 Am. S. R. 38, 7 L. R. A. 599; People v. Cardas, 137 Cal. App. 788, 28 P. 2d 99; and State v. Hundling, 220 Iowa 1369, 264 N. W. 608, 103 A. L. R. 861, are examples of such cases. Such two last-cited cases went so far as to hold that a "bank night" scheme was not a lottery. In that regard, such schemes were identical in all material respects with that involved in State ex rel. Hunter v. Fox Beatrice Theatre Corp., *supra,* wherein we held that such a scheme was a lottery. In that opinion this court said with reference to the scheme: "Its tendency is to draw people without tickets in crowds in front of theaters for something they did not buy or earn, a place of idleness. It encourages in men and women the gambling instinct and the propensity to sustain life on the industry and earnings of others. Idleness, pauperism and crime are some of its bitter fruits. It helps to destroy the initiative essential to individual livelihood and good citizenship. It increases the burdens of law enforcement which fall on the people generally throughout the state, as shown by court records. The lottery laws are directed against these and other evils and it is the duty of courts to give effect to the remedies when properly invoked by prosecuting officers."

In order to give force and effect to statutes comparable with our own, the great weight of authority has

adopted the basic contract theory of consideration, holding that the element of consideration is present if there is a benefit to the promisor who is the promoter of the scheme, or if there is a detriment to the promisee who is the contestant or holder of a chance for the prize. Maughs v. Porter, 157 Va. 415, 161 S. E. 242; State v. Greater Huntington Theatre Corporation, 133 W. Va. 252, 55 S. E. 2d 681; State v. Wilson, 109 Vt. 349, 196 A. 757; State v. Jones, 44 N. M. 623, 107 P. 2d 324; State ex rel. Draper v. Lynch, 192 Okl. 497, 137 P. 2d 949; Knox Industries Corp. v. State (Okl.), 258 P. 2d 910; Herald Publishing Co. v. Bill, 142 Conn. 53, 111 A. 2d 4; Lucky Calendar Co. v. Cohen, *supra*; State ex rel. Regez v. Blumer, 236 Wis. 129, 294 N. W. 491; State v. Laven, 270 Wis. 524, 71 N. W. 2d 287.

The foregoing are factually comparable in every material respect with that at bar, and all concluded that the element of consideration was present and the schemes involved were lotteries. Their basic reasoning is illustrated by State ex rel. Regez p. Blumer, *supra,* wherein the court said: "It is manifest that we have here the prize and the chance. The only remaining element of a lottery is a consideration. The trial court was of the opinion that the facts of the registrants' going to the store each day to get the daily coupon, and that the operation of the scheme paid the defendant or he would not operate it, constitute a consideration. Consideration consists in a disadvantage to the one party or an advantage to the other. We here have both." Such case and the reasoning therein was cited and approved by that same court as recently as State v. Laven, *supra.*

In that connection, the only fundamental difference between the case at bar and the scheme presented in State ex rel. Hunter v. Omaha Motion Picture Exhibitors Assn., *supra,* is that in such case two registration cards were required, while the scheme in the case at bar required but one. In that opinion we said: "Its

purpose is not to give away the prize as a gift. It is conceived in the hope of financial gain. It is merely an inducement to try one's luck in a gamble for comparatively large stakes. As a disguised lottery, pretending that it has all the virtues of good advertising, it attracts thousands of persons who would have nothing to do with it as an unmasked lottery."

In 54 C. J. S., Lotteries, § 2, p. 848, it is said: "The consideration required as an essential element of a lottery need not be great, and, in general, may be money or any other thing of value. Some authorities hold that the presence or absence of consideration is measured by the usual tests applicable in the law of contracts, that consideration may consist of a benefit to the person conducting the scheme, or an inconvenience or disadvantage to the promisee, and hence that money or something of actual pecuniary value need not be directly given for the right to compete."

It has long been the rule, as stated in Thomas, Law of Lotteries, Frauds and Obscenity in the Mails, § 16, p. 35, after citing numerous authorities: "Where a promoter of a business enterprise, with the evident design of advertising his business and thereby increasing his profits, distributes prizes to some of those who call upon him or his agent, or write to him or his agent, or put themselves to trouble or inconvenience, even of a slight degree, or perform some service at the request of and for the promoter, the parties receiving the prize to be determined by lot or chance, a sufficient consideration exists to constitute the enterprise a lottery though the promoter does not require the payment of anything to him directly by those who hold chances to draw prizes." Such statement was quoted with approval in State v. Wilson, *supra,* which also quoted with approval a related part of the opinion in Maughs v. Porter, *supra.*

We also approve such statement and the reasoning of related authorities heretofore cited. Therefore, we

conclude that the scheme here involved was a lottery prohibited by our Constitution and statutes. To hold otherwise would give no force or effect to the clear and unmistakable language used therein, and would loose a flood of competitive, fanciful schemes upon all business in general in order to promote their interests and increase their profits at the expense of the public. To hold otherwise would also encourage promotion of the gambling instinct, not only among adults but also among the children of this state, which our Constitution and statutes clearly intended to prevent.

Finally, defendants in argument would have us define "consideration" as "the payment of money for the purchase of merchandise, chance or admission ticket, or as payment on an account, or requires an expenditure of substantial effort or time" as distinguished from mere registration of one's name "at a store in order to be eligible for the prize" in conformity with a ruling made by the Solicitor General who thereby construed a federal lottery statute for the United States Postal Department. Defendants also attempted to support such contention by citing Federal Communications Commission v. American Broadcasting Co., 347 U. S. 284, 74 S. Ct. 593, 98 L. Ed. 699, which sustained that ruling in the light of failure by Congress to enact legislation overriding it. A like claim made by defendant in Lucky Calendar Co. v. Cohen, *supra,* was found to have no merit. In disposing of such contention, that court cited Phalen v. Commonwealth of Virginia, 8 How. 163, 12 L. Ed. 1030, which has never been overruled, and said: "In contrast it must be borne in mind that we are here dealing with the broadest kind of state statute that legislative language could devise to prevent lotteries and one that has been carefully construed by our courts to give effect to the clear legislative intent against lotteries by whatever course of legal reasoning that may have been employed to reach the result of enforcing the statute." The statement is

applicable and controlling here. Defendants' contention should not be sustained.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendants.

AFFIRMED.