

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

January 30, 1958

Overruled by WW-840
where conflict

Mr. A. G. Mueller
County Attorney
Llano County
Llano, Texas

Dear Mr. Mueller:

Opinion No. WW-355

Re: Whether a drawing for prizes
constitutes a lottery where
some of the tickets are given
with purchase of merchandise
and some of the tickets are
given away free.

This is in reply to your request for an opinion as to whether a certain plan by which merchants give away prizes constitutes a lottery under facts submitted by you as follows:

"As many merchants in a town as may care to, get together and purchase numbered tickets from a ticket manufacturing company, at a price of 'x' cents each. For every ticket they so purchase from the manufacturer, they place the equivalent of 'x plus x¢' in the treasury or 'pot', from which treasury or 'pot' prizes will later be awarded at a public drawing of the lucky number.

" . . .

"The merchants distribute the tickets to persons who visit their establishments, whether or not they purchase merchandise. Should merchandise be purchased, the customer is given a ticket for each $1.00 in value so purchased, merely as a matter of limiting the number of tickets to a customer. If the customer desires to make no purchases, he will be given, upon request, as many tickets as he desires, absolutely free.

"Each Saturday evening at a stipulated time, a drawing is had from the tickets given away (a portion of the ticket being deposited in a recepticle maintained in the business establishment of each merchant where the tickets are available, and a stub being retained by the

holder thereof) and the lucky number or numbers are announced. If the holder of the lucky number or numbers are not present, they will nontheless be handed the prize or prizes provided they contact one of the participating merchants within 7 days from date of the drawing, and exhibit the stub or stubs to the winning ticket or tickets. Should they not make such exhibition within such time, the prize or prizes are placed back in the 'pot' for redistribution after another drawing.

"Purpose of this arrangement is to encourage people in the particular town to trade 'at home' - but not with any particular merchant. Tickets are available for purchase by ANY MERCHANT OR BUSINESS MAN in the particular town."

Section 47, Article III, Constitution of Texas, provides as follows:

"The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States."

Article 654, Vernon's Annotated Penal Code, reads as follows:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred nor more than one thousand dollars; or if any person shall sell, offer for sale or keep for sale any ticket or part ticket in any lottery, he shall be fined not less than ten nor more than fifty dollars."

Chief Justice Cureton, speaking for the Supreme Court of Texas, in the case of City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S.W.2d 695, said:

"The State Penal Code does not define a lottery, but our courts have interpreted it in accordance with public usage, to mean a scheme or plan which provides for a

distribution of prizes by chance among those who have paid, or agreed to pay, a consideration for the right to participate therein."

In this case the plan clearly contains two of the elements of a lottery, to wit, "a prize" and distribution by "chance", and the only question is whether the plan contains the third element, that is, payment of "a consideration for the right to participate." We think that under the facts you have submitted in this case there was a payment of a consideration for the right to participate in the plan for the distribution of the prizes by chance; and, therefore, the plan is a lottery.

The facts given show that the merchants who participated in the plan gave for each one-dollar's worth of merchandise purchased a ticket, constituting a chance on the drawing; and also some tickets were given away free to customers, who apparently came in the store and who made no purchases. There was "a consideration paid" to participate, because in return for giving out the chances in the form of the tickets and the giving away of the prizes the merchants received the good will and patronage of the persons favored with the tickets. All of the persons receiving tickets came into the store and the merchant thereby had an opportunity to display his merchandise. It is a fundamental rule of merchandising that the first step in selling is to bring customers to where the merchandise is on display. Merchants pay money for advertising merely to get customers in their place of business, because if customers come into the place a part of them usually buy. The fact that the customer went to the merchant's place of business was of value to the merchant, and constituted a consideration. This point is illustrated in the case of Smith v. State, 136 Tex. Cr. R. 611, 127 S.W.2d 297, in which the defendant was convicted of operating a lottery, the facts being that cards were issued by merchants and a drawing held in a theatre, and although most of the card holders had bought merchandise in order to obtain cards and participate some had not paid anything. The Court held the plan was a lottery, and on motion for rehearing it was said:

" . . . It is obvious that the dealer, merchant or business establishment not contributing to the prize, did not receive any card or stamp for distribution. Consequently, parties desiring to secure a chance at the prize would necessarily have to go to such merchant or business establishment as had contributed to the general fund. As a result, the good will and patronage of the person favored with the cards is secured. This patronage, whatever it may be, is given in exchange for cards and stamps, which is an

indirect benefit to the operator of the scheme, and en-
ables him to continue his game of chance. It is a bait
handed out to the gullible as an inducement to become
customers of the dealers or merchants subscribing to
the plan."

A similar holding was made in the case of Featherstone
v. Independent Service Station Ass'n, (Ct.Civ.App.) 10 S.W.2d 124, in
which the Court said:

" . . . While dealers, under the new plan, dis-
tributed tickets to noncustomers as well as to customers,
it seems that the scheme was to distribute tickets, in the
main to customers, as the evidence discloses that only a
few, negligible in number, were given to persons other
than customers. That the giving of tickets, and the draw-
ings and distribution of prizes, were inducements to pa-
tronage and unquestionably lured customers, is shown
from the very satisfactory business results that followed.
Patronage thus induced was the consideration that passed
from the ticket holder for the chance received, in that the
price paid. whatever it was, the amount being immaterial,
constituted the aggregate price for the merchandise or ser-
vice and the ticket that represented a chance to win the
prize; in other words, for one undivided price both were
purchased, the merchandise, or service, and ticket, the
ticket being as much bought as though priced separately.
State v. Danz, 140 Wash. 546, 250 P. 37, and annotations
48 A.L.R. 1109, 1122. We are of the opinion, therefore,
that the court did not err in concluding that the facts con-
stituted a lottery within the meaning of the law." (Em-
phasis ours)

Another reason why there was "a consideration paid" in
this case is that we must look at the whole plan or scheme and if the per-
son or persons who give the prizes, that are distributed by chance, re-
ceive a consideration, it makes no difference that such consideration is
paid by only a part of the participants. This reasoning was recognized
by the Supreme Court of Texas in the case of City of Wink v. Griffith
Amusement Co., supra, in which the Court said:

" . . . We are unable to see in what manner the
giving of free registration numbers to those outside of

> the theater would change the legal effect of what was done inside the theater, for which a charge was made; nor does the fact that a claimant's right to the prize was evidenced by a registration book instead of a ticket, as is usual in lotteries, change the legal result. The registration numbers represented 'chances' at the prize just as effectively as would tickets to the drawing." (Emphasis by the Court)

The Court of Criminal Appeals of Texas approved this reasoning in the case of Cole v. State, 133 Tex.Cr.R. 548, 112 S.W.2d 725, in which it said:

> "'. . . They paid a valuable consideration to participate. The fact that they paid the same price charged on other nights when the theater was running a more popular play without an added attraction is not conclusive or controlling in favor of the appellants. A valuable consideration was paid. What did the purchaser get? Not simply a ticket for the screen show, but a ticket to that, and to the chance drawing. The appellants and their patrons so understood and intended it. That was the plan and purpose for which the consideration was paid. Nor is the fact that free tickets were offered to outsiders material in any controlling sense. None such were given out as a matter of fact and, if there had been, it would not of itself have made any difference. If in the flourishing days of the Louisiana lottery its management had advertised that it would give a free ticket to the president of every bank in the city of New Orleans, that would not have changed the scheme from a lottery, whether or not any one or all of such free tickets were accepted.' (Emphasis ours)

> ". . .

> "In short, we think it does not materially affect the scheme that there be a possibility that some one might get a prize who had not paid for a ticket. . . ."

> Although some jurisdictions hold to the contrary, we believe a majority of the States follow the rule stated in the case of Cole v. State, supra, and which is well expressed in the case of McFadden v. Bain, 126 Ore. 250, 91 Pac. 2d 292, in which the Supreme Court of Oregon said:

> "To constitute a lottery, it is not necessary for
> all participants to pay for their chances, but it is suffi-
> cient if some do, though many do not pay a valuable con-
> sideration. The legal effect of the transaction is not
> changed by the fact that some do not pay. If it is a lot-
> tery as to those who do pay, it necessarily is a lottery
> as to those who do not pay for their chances."

Other cames to the same effect are Commonwealth v. Wall, 295 Mass.
70, 3 N.E.2d 28; Glover v. Malloska, 238 Mich.216, 213 N.W. 107, 52
A.L.R. 77; Iris Amusement Corporation v. Kelly, 366 Ill. 256, 8 N.E.2d
648; and State v. Omaha Motion Picture Exhibitors Ass'n, 139 Neb. 312,
297 N.W. 547.

We are advised that those who contend that this plan is
legal rely on the case of Brice v. State, 156 Tex.Cr.R. 372, 242 S.W.2d
433, in which the Court held that a certain scheme for giving away prizes
at a ticket drawing was not a lottery. We think that case is distinguish-
able by the fact that the State failed to show payment of a consideration
in that it did not show that any money was paid for any of the tickets and
did not show that the participants were prospective customers who went
into the place of business. The correctness of the holding in the case of
Cole v. State, supra, was recognized by the Court in the Brice case in
language as follows:

> "As we construe the Cole case, affirmance was
> based upon the holding that the scheme called 'Bank
> Nite' was but a subterfuge; that it was the purpose and
> plan of the accused to increase the patronage of his show;
> that the cost of the ticket constituted a consideration also
> for the chance, and the fact that others might get chances
> at the drawing without consideration did not materially af-
> fect such scheme." (Emphasis ours)

We think it appropriate to conclude this opinion in the
words of the Court in the case of Hoffman v. State, (Ct.Civ.App.) 219
S.W.2d 539, as follows:

> ". . . Our Constitutional provision against lot-
> teries 'or other evasions involving the lottery principle'
> (Sec. 47, Art. 3) is strongly worded, the same or similar
> language appearing in all preceding Constitutions; being
> uniformly construed 'with a view to remedying the mis-

chief intended to be prevented, and to suppress all evasions for the continuance of the mischief.' 54 C. J. S., Lotteries, 8 19, p. 862. 'Where the question presented is one of enforcing criminal responsibility, or of refusing to aid in a transaction alleged to be within the statutory prohibition, the courts will ordinarily construe liberally the provisions relating to lotteries so as to include all schemes which appeal to the gambling propensities of men.' State ex rel. Beck v. Fox Kansas Theatre Co., 144 Kan. 687 62 P.2d 929, 933, 109 A.L.R. 698.

"Man's ingenuity has been fertile in the invention of schemes and devices for the purpose of satisfying at least the letter of these enactments (Const. sec. 47, Art. 3; Art. 654, Penal Code). But considering the liberal construction heretofore accorded to them, and, in slight paraphrase of the oft-quoted statement from Long v. State, 74 Md. 565, 22 A.4, 12 L.R.A.425, 28 Am. St.Rep. 268, we venture the following assertion· That we believe it almost impossible for the most ingenious and subtle mind to devise any scheme or plan, short of a gratuitous distribution of his own property, that will not be held by the courts of this State as in violation of the foregoing statute." (Emphasis by the Court)

## SUMMARY

A plan by which a group of merchants in a town give away numbered tickets, giving a ticket for each one-dollar's worth of merchandise purchased, and also giving some tickets free to customers who do not make purchases, and the stubs of such tickets from all of said merchants are deposited by the recipients in a receptacle, and a drawing held at one central place in the town at a certain time, and the holders of the ticket having the number drawn given a prize, constitutes a lottery in violation of Section 47, Article III, Constitution of Texas, and Article 654, Penal Code

of Texas, even though some of the ticket holders received their tickets free.

APPROVED:                           Yours very truly,
OPINION COMMITTEE:

                                    WILL WILSON
George P. Blackburn,                Attorney General of Texas
Chairman

                                    By
Jack Goodman
Mark McLaughlin                         Cecil C. Rotsch
Ralph R. Rash                           Assistant

Reviewed for the Attorney General

By: W. V. GEPPERT