REQUESTED BY: Ronald D. Lahners, Lancaster County Attorney, Lincoln, Nebraska.
Are punchboards to be considered a form of gambling prohibited by state statutes or are those devices exempt under the lottery laws or other statutes?
A punchboard scheme is a lottery and as such is made illegal by section 28-964.01, R.R.S. 1943, unless specifically authorized by sections 28-964.01 to 28-964.05, R.R.S. 1943.
Section 24, Article III, of the Nebraska Constitution, prior to 1968, prohibited the Legislature from authorizing games of chance or lotteries wherein consideration was required. In 1968, the people of the State of Nebraska amended Section 24, Article III, so that it now reads as follows:
 "The Legislature shall not authorize any game of chance, nor any lottery, or gift enterprise where the consideration for a chance to participate involves the payment of money for the purchase of property, services, chance or admission ticket, or requires an expenditure of substantial effort or time; Provided, that it may authorize and regulate other lotteries, raffles, and gift enterprises which are intended solely as business promotions or the proceeds of which are to be used solely for charitable or community betterment purposes without profit to the promoter of such lotteries, raffles, or gift enterprises. Nothing in this section shall be construed to prohibit the enactment of laws providing for the licensing and regulation of wagering on the results of horse races by the parimutuel or certificate method, when conducted by licensees within the race track enclosure at licensed horse race meetings, or to prohibit the enactment of laws providing for the licensing and regulation of bingo games conducted by nonprofit associations which have been in existence for a period of five years immediately preceding the application for license; Provided, bingo games cannot be conducted by agents or lessees of such associations on a percentage basis."
In 1969, the Legislature exercised the authority granted it by the amendment by passing sections 28-964.01 to 28-964.05, R.R.S. 1943. Section 28-964.01 reads in part as follows:
 "Except as specifically authorized by sections 28-964.01 to 28-964.05, it shall be unlawful for any person, as defined in section 49-801, to establish, operate, carry on, or promote any game of chance, lottery, raffle, or gift enterprise containing the elements of prize, chance, and consideration where the consideration for a chance to participate involves the payment of money for the purchase of property, services, chance or admission ticket, or requires an expenditure of substantial effort or time. . . ."
It is therefore quite clear that only those games of chance, lotteries, raffles, or gift enterprises that are `specifically authorized' by the Legislature are legal. Those authorized exceptions are enumerated in sections 28-964.02 through 28-964.04.
Section 28-964.02 authorizes a person engaged in a bona fide business to conduct contests and lotteries for the sole purpose of business promotion and not for profit to such person. No fee can be required for participation but the contest may require evidence of purchase of a product so long as the price charged for the product is not inflated due to the contest.
Section 28-964.03 provides as follows:
 "Any bona fide nonprofit organization whose primary activities are conducted for charitable and community betterment purposes may conduct lotteries, raffles, and gift enterprises when the proceeds of such activities are used solely for charitable or community betterment purposes and the awarding of prizes to participants."
The Nebraska Supreme Court, in State v. CityBetterment Corporation, 197 Neb. 575, ___ N.W.2d ___ (1977), held that this exception is only available to organizations which are actually conducting charitable and community betterment activities other than the operation of a lottery, as opposed to an organization whose primary activity is the operation of a lottery. In addition, the court held that `proceeds,' as used in the Constitution and in section 28-964.03, refers to net proceeds, after deduction of reasonable and necessary expenses incident to the organization and operation of a lottery.
Section 28-964.04 authorizes a county, city or village to conduct lotteries if the proceeds are used solely for community betterment purposes and the awarding of prizes to participants.
The term `lottery' as used in the above statutes was not defined by the Legislature. However, the Nebraska Supreme Court, in State ex rel. Hunter v. Omaha Motion PictureExhibitors Ass'n, 139 Neb. 312, 297 N.W. 547 (1941), defined lottery as follows on page 314:
 "It is fundamental in order for a scheme to be lottery that three elements must exist. First, there must be a distribution of property by chance, commonly referred to as a prize. Second, the prize must be awarded by lot or chance. Third, the participants must have paid consideration for the chance of winning the prize. Unless all three elements are present, the lottery laws have no application. . . .
 ". . . When the question presented is one of enforcing criminal responsibility, or of refusing to aid in a transaction alleged to be within the statutory prohibition, the courts will ordinarily construe liberally the provisions relating to lotteries so as to include all schemes which appeal to the gambling propensities of men. See 38 C.J. 305. It would be difficult to state with exactness all the plans or schemes that fall within the statutory definitions of a lottery. We shall not attempt to do so.
 The term `lottery' is generic in nature and best left without exact definition. . . Generally speaking, it is a scheme which tends to induce one to pay or agree to pay a valuable consideration for a chance to draw a prize."
In our view, there is little doubt but that a punchboard contains the three elements of a lottery, i.e., prize, chance and consideration; and there is little doubt but that a punchboard scheme is one which `tends to induce one to pay or agree to pay a valuable consideration for a chance to draw a prize.' There is little doubt, therefore, that a punchboard scheme falls with the definition of `lottery' as previously defined by the Supreme Court. As a general proposition, the Legislature is presumed to know of Supreme Court cases upon the subject of their legislation. Therefore it must be presumed that the Legislature knew the definition of a lottery, as defined by the Supreme Court. Consequently, the Legislature apparently did not intend to apply a narrower definition of lottery than that above or it would have defined lottery. It is therefore our opinion that a punchboard is a lottery prohibited by section 28-964.01, and authorized to a limited extent by sections 28-964.02 to 28-964.04.
A question remains, however, whether a punchboard is a gambling device prohibited by section 28-945, R.R.S. 1943, even though the scheme may be authorized by sections 28-964.02 to 28-964.94. There is little doubt but that a punchboard would ordinarily be a `gambling device' within the meaning of section 28-945. See Baedaro v. Caldwell,156 Neb. 489, 56 N.W.2d 706 (1953). However, the question arises whether the exemptions contained in section 28-964.02 to 28-964.04 also impliedly create an exemption to section 28-945. In our opinion they do.
The Nebraska Supreme Court in State v. City BettermentCorporation, supra, held that the term `promoter' as used in the Constitution and in section 28-964.03 refers only to the persons or organization legally responsible for the operation of the lottery, rather than to all persons who help organize, manage or in any other way help to advance the lottery as contended by the state. In rejecting the state's contention, the court reasoned as follows on page 583:
 ". . . The State contends that anyone who advances money, sells tickets, secures financing, helps organize, manages, or in any other way helps to advance a lottery is a promoter of that lottery. It also contends that any person or firm performing any functions for a promoting organization cannot profit or be paid for such services because of the constitutional prohibition against profit to the promoter. In essence, such a definition would mean that all services would have to be donated, including even the printing of lottery tickets. Any such interpretation would make it difficult, if not impossible, to hold a legal lottery except for a very small local lottery, and it could make dozens, or even hundreds, of helpful but unwary persons subject to criminal responsibility in the event legal boundaries were breeched. . . ."
We believe that if the Supreme Court were faced with the question of whether an entity authorized to conduct a lottery under sections 28-964.02 to 28-964.04 could nevertheless be charged with unlawful possession of gambling devices, that the court would employ this same basic reasoning in determining that such an interpretation `would make it difficult, if not impossible to hold a legal lottery,' and it `could make dozens, or even hundreds, of helpful but unwary persons subject to criminal responsibility' due to the fact that it is difficult to conceive of any lottery, as defined by the court, which could operate without the use of some gambling device. We believe that in a prosecution for possession of gambling devices, the court would require an inquiry into the purpose or intent for which an article is to be used, and a violation would only be found where the gambling devices were kept for illegal gambling purposes as opposed to purposes specifically authorized by sections 28-964.02 to 28-964.04. See State v. Wallen, 185 Neb. 44,173 N.W.2d 372 (1970), which discusses gambling devices and finds the evidence therein sufficient for the trier of fact to find `the gaming devices were kept for illegal gambling purposes' (p. 51).
For the reasons expressed above, it is our opinion that a punchboard scheme is prohibited by sections 28-945 and 28-964.01, except as specifically authorized by sections 28-964.02 to 28-964.04.