STATE ex rel. DRAPER, County Atty., v. LYNCH.

No. 30526. May 25, 1943.

*137 P. 2d 949.*

498

Charles E. Draper, County Atty. of Tishomingo, and Fred Hansen, Asst. Atty. Gen., for plaintiff in error.

Cornelius Hardy, of Tishomingo, for defendant in error.

CORN, C. J. This action was brought by the state, on relation of the county attorney of Johnston county, against the defendant as the operator and proprietor of two theatres in Tishomingo, Okla., to restrain and perpetually enjoin defendant from conducting what is known as "policy night" or "box office insurance," on the ground that it is a lottery and within the prohibition of our statute, the same being 21 O. S. 1941 § 1051.

The material paragraphs of the petition alleged, in substance:

"3. To increase the paid attendance and revenues of the two theatres defendant was operating 'policy night' by registering anyone who applied, on form applications, for 'box office insurance,' the applications being placed in sealed envelopes in a numerical file.

"4. Without any charge for registration each applicant was issued a 'box office insurance' policy, of the face value of $20.

"5. On designated nights judges were selected from the audience and the audience supplied them with numerals, which formed the number of the application bearing the name of the 'policy' to be redeemed. This selection was announced inside and outside the theatres, and the person whose name was announced could appear within a reasonable time, surrender his policy and receive $20. If not claimed this amount was added to the next policy as 'accrued value.'

"6. As a result of the operation of this scheme, and in order to more readily redeem their policies, persons attended the theatres and paid admission who otherwise would not have done so, thereby increasing attendance and revenues as intended by defendant.

"7. By purchasing admission tickets such persons not only paid consideration for their own chance of winning, but also paid consideration for those accorded a chance to win without being present inside the theatres.

"8. That consideration was paid by each person accorded a chance to win without purchasing a ticket, by reason of the legal detriment sustained in being required to register and appear within a required time after such person's name was called, in order to 'redeem' his policy."

Thereafter plaintiff alleged this scheme was a lottery within the prohibition of 21 O. S. 1941 § 1051; that same was unlawful and a public nuisance within the prohibition of the succeeding sections, and asked a perpetual injunction against the scheme.

Defendant's answer admitted the allegations of paragraphs 1, 2, 3, and 4 of the petition, but denied the allegations of paragraphs 6, 7, 8, 9, and 10. The substance of paragraph 5 was admitted, except as to the method of selection and the time allowed to appear and claim the prize.

Further answering, and as an affirmative defense, it was alleged that: no

consideration was paid for the policies but that they were issued without charge; no part of the admission price constituted a consideration for the policies; no part of such admission price constituted valuable consideration for policies held by persons not purchasing tickets; there was no agreement that legal detriment should exist in the requirement that a policyholder should appear and redeem his policy within the time given, so that this would constitute consideration on the part of those who held policies but did not purchase tickets; that the scheme did not constitute a lottery within the meaning and prohibition of the statute.

The allegations of paragraph 3 of the amended petition were that "policy night" as conducted by defendant was intended to, and did, result in increased attendance and revenues for defendant. This could only mean that persons attended the theatres who otherwise would not have attended, in order that they might be able to redeem their policies in the event their name was called.

Paragraph 6 expressly alleged that many applicants paid admission who otherwise would not have done so, thereby increasing attendance and revenues. These allegations of fact were borne out by the testimony of witnesses, two of whom testified, in effect, that they would not have attended except for the privilege of taking part in the drawing.

After hearing such testimony the trial judge stated:

"It seems to me you could agree on the facts here. The witnesses are all testifying to the same thing. It is natural that the attendance is larger when money is given away, it is purely a legal question."

At the close of the evidence the court stated he inclined to a liberal construction of the statute; that he could not see where any consideration was paid for the chance of receiving the prize, and thereupon overruled plaintiff's motion for judgment, and entered judgment for defendant.

The defendant does not dispute that two of the three elements of a lottery are present in this scheme, viz., "prize" and "chance." But defendant contends that no element of "consideration" is present, since under the scheme anyone could register and win the prize without having to purchase an admission ticket.

Lotteries have been known, in one form or another, from Biblical days to the present time. Innumerable definitions have been given of them, but in all of these it is to be noted that there is little real difference, other than in the mode of expression. Webster's International Dictionary (2d Ed.) defines a lottery as being:

"A scheme for the distribution of prizes by lot or chance, especially a scheme by which one or more prizes are distributed by chance among persons who have paid or promised a consideration for a chance to win them. . . ."

This definition was approved in Horner v. United States, 147 U. S. 449, 27 L. Ed. 237. See, also, 34 Am. Jur. 646.

The English definition of a lottery, based upon judicial decisions, states that a lottery is any scheme, device, or plan for distributing prizes by lot or chance. While the elements of a lottery are not enumerated, the English concept of a lottery includes "consideration" and follows the same formula that is applied by the American courts, declaring that a lottery is any gambling scheme which contains elements of (1) prize, (2) chance, (3) consideration. In the book, Flexible Participation Lotteries, Williams (1938) §§ 192, 194, 195, lotteries are shown to be divided generally into three distinct classes, or types. These are: (1) Closed Participation— this type being any lottery in which the attendant restrictions of purchase of goods, tickets, etc., are a condition precedent to participation. These are uniformly declared to be lotteries. (2) Open Participation—in this class none of the participants are required to do anything in order to participate, and no offer of any kind is extended as an inducement for participation. (3) Flex-

ible Participation—this type professes to be free, but is closely related to the closed participation type. The essential difference lies in the fact that this scheme is relaxed sufficiently to include some who are, theoretically, nonpaying participants. Although represented as being free, there are, ordinarily, restrictive conditions which serve to make this scheme much more favorable to paying participants than to nonpaying, although in theory their chances are coequal. There is a closed participation within the flexible scheme, and a better or deluxe chance at the prize can be had only by payment of money for admission, or the price of participation.

This type of lottery first appeared in this country about 1889, and at that early date provided the basis for extensive litigation in the famous case of Yellowstone Kit v. State, 88 Ala. 196, 7 So. 338. Since that time there have been a multitude of schemes put into operation under different names, all of which have been based upon virtually the same plan of operation, with variations only in the name and details of operation.

From the foregoing statement regarding the plan of operation of "box office insurance," it is plain that this "policy night" is merely the "Gay Nineties" harridan of Yellowstone Kit, attired in new raiment of purported legality and paraded to the public view with this new found aura of respectability. Inasmuch as this scheme falls into the flexible participation class, it shall be necessary to consider only this particular type of enterprise in dealing with the subject of lotteries herein.

Our statute, 21 O. S. 1941 § 1051, provides:

"A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid, or promised, or agreed to pay any valuable consideration for the chance of obtaining such property, or a portion of it, or for any share of or interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot

or chance, whether called a lottery, a raffle, or a gift enterprise, or by whatever name the same may be known. Provided, it shall not be a violation of the lottery or gambling laws of this state for a bona fide resident merchant or merchants of a city or town, acting together or in conjunction with the Chamber of Commerce or Commercial Club thereof, to issue free of charge numbered tickets on sales of his merchandise, the corresponding stub of one or more of which tickets to be drawn or chosen by lot by a representative or representatives of said Chamber of Commerce or of said Commercial Club in the manner set forth on said tickets, the numbered stub or stubs so drawn to entitle the holder of the corresponding numbered issued ticket to a valuable prize donated by said merchant."

21 O. S. 1941 § 1052, then provides:

"Every lottery is unlawful, and a common public nuisance."

Section 1051, supra, has been construed most recently in State ex rel. Callihan v. Wokan Amusement Co., 162 Okla. 160, 19 P. 2d 967; and in Settle v. State, 183 Okla. 549, 83 P. 2d 561. However, in neither of these cases has this court been called upon to construe our statute in the light of such a situation or plan of operation as here exists, and for this reason these cases offer little precedent upon which to base our decision. But attention is here directed to our holding in the Settle Case, supra. We held therein that the scheme did not fall within the proviso mentioned in our statute. Comparison of our statute with statutes of other states reveals that such provision is not expressed in many of them.

At least three states have statutory prohibitions very similar to our own. In addition to the constitutional prohibition (Const. 1857, art. 4, § 31), the statute of Minnesota (Mason's Statutes of 1927) sec. 10209, provides:

"A lottery is a scheme for the distribution of property by chance, among persons who have paid or agreed to pay a valuable consideration for the chance, whether it shall be called a lottery, raffle, gift enterprise, or by any other

name, and is hereby declared unlawful and a public nuisance."

· This statute was recently construed in State v. Schubert Theatre Players Co. (1928) 203 Minn. 366, 281 N. W. 369, wherein the plan of operation was called "ten-o-win," and the Minnesota court therein pointed out that:

"There is no substantial difference between the lottery described in this information and 'bank night' operated strictly according to the instructions of the originator of that scheme involved in State v. Stern, 201 Minn. 139, 275 N. W. 626, which was held to justify a jury in finding a valuable consideration paid for the chance to obtain the prize."

The State of Washington has a statute very similar to our own. Section 2464, Remington's Revised Statutes of Washington, Ann., is as follows:

"A lottery is a scheme for the distribution of money or property by chance, among persons who have paid, or agreed to pay a valuable consideration for the chance, whether it shall be called a lottery, raffle, gift enterprise, or by any other name, and is hereby declared unlawful and a public nuisance."

This section of the Washington statute has been passed upon several times by the Supreme Court of that state, and it has been held that such schemes, similar to "bank night," are lotteries, although it is possible to win the prize without purchasing a ticket. See State of Washington v. Danz (1926) 140 Wash. 546, 250 P. 37, 48 A. L. R. 1109, and compare with Society Theatre v. City of Seattle (1922) 118 Wash. 258, 203 P. 21, which treats with a different variation of the flexible participation scheme.

The statute in the State of California, Kerr's Cyc. Code (1920) Title IX, chp. IX, sec. 319, provides:

"A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known."

The California court has recently held, in People v. Cardas (1933) 137 Cal. A. 788, 28 P. 2d 99, that a scheme known as "Catalina night," where free vacation trips were given under usual scheme, with a slight variation in that free chances were distributed to the public at large, was not a lottery. ·

In holding that this scheme did not constitute a lottery, the California court attempted to draw a distinction in the plan of operation in such schemes, and this differentiation, together with the reasoning in the dissenting opinion in State of Washington v. Danz, supra, formed the basis for the decision of the California court.

Comparison of the above-quoted statutes reveals their similarity, both as to text and intention, i. e., prevention and prohibition of all lotteries. While not bound by statutes and the judicial interpretations from other jurisdictions, we are of the opinion that, in instances of such striking similarity of the different states' statutory provisions, the interpretation given to such statutes is worthy of notice and entitled to serious consideration. ·

Three elements are always necessary for a scheme to be held to be a lottery, namely: (1) prize; (2) chance; (3) consideration. 34 Am. Jur. § 3, at 547; Affiliated Enterprises v. Gruber (Mass.) 86 F. 2d 958. If any one of these elements is not present as an integral part of the scheme, then no lottery exists. State v. Hundling, 220 Iowa, 1369, 264 N. W. 608, 103 A. L. R. 861; Williams Furn. Co. v. McComb Chamber of Commerce, 147 Miss. 649, 112 So. 579, 57 A. L. R. 421.

The defendant makes no contention that the elements of prize and chance are not present in his scheme, but bases his entire argument that "box office insurance" is not a lottery wholly upon the proposition that there is no element of "consideration" present in the scheme and that, therefore, it is not a lottery.

502

A review of any or of all of the multitude of decisions dealing with this subject reveals that the requirements are always such that there are present some conditions which the participants are first required to fulfill. Here there were two absolute and undeniable prerequisites for participation in "policy night." First, registration of the patron's name on an application in order to receive the policy and have the application filed for drawing. Second, attendance at, or near, the theatres each Thursday night in person. Each participant at least had to hold himself in readiness to appear and claim the prize within a reasonable time, although there is no indication in any manner as to what would constitute a "reasonable time." Obviously either of these, in the absence of the other, is absolutely worthless to the participant. And it is equally as obvious that, in fulfilling either or both of these requirements, the participant suffered some inconvenience or detriment to himself.

Schemes of this kind are said to involve consideration in the following ways, *and this means consideration flowing from the participants to the operator of the scheme,* in that: (1) The registrant is out his time and trouble in going to register in order to be eligible for participation; (2) registrants are subjected to the theater's sales appeal, of definite value to the theater; (3) the register makes up a convenient mailing list without cost to the theater, which is of definite value; (4) time and trouble is expended in attending the drawings to participate; (5) participants render services by advertising the scheme at large, and this is valuable because the radio and the mails are closed to such advertising; (6) registrants more often than not pay admission in order to participate more comfortably and have a superior chance to win; (7) presence of participants at the drawing, even outside, in response to defendant's scheme, and solely for purpose of participating therein. Maughs v. Porter (1930) 157 Va. 415, 161 S. E. 242.

There is also a further consideration

sometimes said to be present in the mass by reason of the collective contribution of the purchasers, in spite of the fact that some of them participate without paying for the privilege by purchase of admission tickets. See 34 Am. Jur. § 648, and cases cited under footnote 2.

In dealing with the question of consideration in such schemes, we are forcefully impressed by the language used in Affiliated Enterprises, Inc., v. Gantz (C.C.A. Okla.) 86 F. 2d 597, at 599:

"The plan or system portrayed in the copyrighted sheets discloses more than once that an admission charge must not be exacted as a condition entitling one to participate in the drawing. Everyone, if he holds or does not hold or buy or does not buy a paid admission ticket to the show, is entitled to register at the entrance or in the lobby of the theatre, and he is thereupon designated by number opposite his name and must be permitted to have an equal chance with every other registrant in drawing the prize. This seems to be a subterfuge to escape the stigma of being a lottery. It is apparent that no one would give prizes if all the participants in the drawings paid no admission fees. Show places are conducted for profit. The plan would be wholly worthless as a money making scheme, both to lessor and lessee. It is further apparent that when nonpaying participants and those who pay admission are each given the same chance at drawing the prize the lucky number may represent one who paid to get in only because of his interest in the drawing. Indeed, that is more than probable. Then how can it be maintained that the supposed evasion converted a lottery or gambling device into a mere altruistic opportunity and occasion to bestow a gift. If not within the literal definitions of those vices, plaintiff's plan and system is too closely akin to have the protection and assistance of a court of equity."

And in United-Detroit Theatre Corp. v. Colonial Theatrical Enterprize (1937) 280 Mich. 425, 273 N. W. 756, it was said:

"But while the patrons may not pay and the respondents may not receive any direct consideration, there is an indirect consideration paid and received.

The fact that prizes of more or less value are to be distributed will attract persons to the theatre who would not otherwise attend. In this manner those obtaining prizes pay consideration for them and the theatres reap a direct financial benefit."

See, also, Kessler v. Schreiber (N. Y.) 39 F. Supp. 655; State of Washington v. Danz, supra; State v. Schubert Theatre Players Co., supra.

Under the defendant's scheme the hope of redemption of a "policy" was the inducement of each participant to register and attend defendant's theatres. This hope or opportunity of redemption increased attendance and likewise the revenues, and this was true in spite of the evidence that the entertainment furnished on "policy night" did not meet the usual standards.

It is obvious defendant could not give prizes, or redeem the policies, if none of the "policyholders" paid admission, for in such case the entire scheme, admittedly for the purpose of increasing attendance and revenue, would be valueless either to the defendant or his lessor, since the avowed purpose in employing the scheme is the profit element involved.

For further discussion dealing with this subject, see: State v. Fox Kansas Theatre Co., 144 Kan. 687, 62 P. 2d 929; City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S. W. 2d 695; State v. Omaha Motion Picture Exhibitor's Assn., 139 Neb. 312, 297 N. W. 547; Stern v. Miner, 239 Wis. 41, 300 N. W. 738; Commonwealth v. Payne, 307 Mass. 56, 29 N. E. 2d 709; State v. Jones et al., 44 N. M. 623, 107 P. 2d 324, and authorities collected therein; and the annotations on this subject in volumes 48, 57, 103, 109, 113, A. L. R.

There is, of course, a line of contrary decisions, based upon the theory first advanced in Yellowstone Kit v. State, supra, all holding that no consideration can be present unless money is paid as a condition precedent for participation. These cases have provided the basis for what we view as the minority rule,

more recently stated in State v. Eames, 87 N. H. 477, 183 A. 590; State v. Hundling, 220 Iowa, 1369, 264 N. W. 608, 103 A. L. R. 861; People v. Cardas, 137 Cal. A. 80, 28 P. 2d 99; People v. Shafer, 289 N. Y. Supp. 649; State v. Crescent Amusement Co., 170 Tenn. 351, 95 S. W. 2d 310. However, attention is respectfully directed to State v. Jones et al., 44 N. M. 623, 107 P. 2d 324, expressly overruling City of Roswell v. Jones, 41 N. M. 258, 67 P. 2d 286, which adhered to the minority rule; and to Grimes v. State, 28 Ala. 40, 178 So. 69, indicating the adherence of the Alabama court to the majority rule, despite the foundation laid by the Yellowstone Kit line of decisions in the earlier cases. See, also, the recent case of Furst v. A. & G. Amusement Co. (N. J. 1942) 25 Atl. 2d 892, wherein the New Jersey court, which formerly held to the minority rule, by unanimous vote accepted the majority view.

Consideration of these cases shows they are all founded on the theory that there cannot be a lottery unless each participant pays something as a condition precedent to participation; and in such schemes nothing is really paid, directly or indirectly, for the chance to participate, since no part of the admission charge is for the privilege, and nothing can be paid by those who take part without the purchase of a ticket.

This is the same reasoning used by defendant in arriving at the conclusion in the present case that no consideration is paid and that hence no lottery exists. The argument is made that those who register and participate "free" really pay nothing. Further, that there is absolutely no evidence that any portion of the admission price charged paying patrons is allocated to the scheme as a part of the price charged, or is by any person considered as payment for the chance to win.

This argument is without merit. We have already pointed out that we are of the opinion that it is obvious that things other than money can constitute a sufficient consideration, moving from the participants in such scheme to the

504

operators, without any cash outlay being made. Moreover, two witnesses testified, in effect, that they would not have attended on "policy night" had it not been because of the expectation of taking part in the drawing.

The fallacies in this reasoning are easily apparent and we are not convinced of any merit in the argument. We are of. the opinion that the better and sounder rule is correct in holding that sufficient consideration passes in these transactions, regardless of whether some participate without paying admission, to supply the necessary element and convict such schemes as being lotteries, by looking to the plan and means of operation, rather than the wording or the name of the plan itself.

Lotteries were deemed of sufficient importance to cause our Legislature to deal with them in specific language. It is the duty of this court to give effect, whenever possible, to the expressions of our Legislature, with the view in mind of preventing the mischief toward which these statutes are directed, and to thereby suppress the subterfuges and evasions set up by conniving individuals in seeking a continuance of such evils. The framers of our Constitution and our Legislature, acting for the people of this state, have formulated the laws under which we live. It is not a matter of a capricious whim with this court as to whether legislative enactments shall be enforced, but it is the solemn duty of this court to see that these pronouncements are given the effect intended.

Examined in any light, it is clear that this scheme is only another effort, cloaked with the outward habiliments of apparent legality, to escape the stigma of being denominated a lottery in the same fashion as its forerunner, "bank night." As has been said, when the courts see such attempts at camouflage or concealment, it is their duty to pull aside the disguise and show the transaction in its true light, inquiring into the real nature of what is done under the plan and the purpose for which it operates; and, when the substance of such a scheme is once determined to be within the prohibition of the statute, the disguise under which such scheme is presented shall not serve to place the stamp of legality upon the enterprise.

We decline to lend assistance to the furtherance of any such subterfuge as is attempted by defendant's plan. The test of a lottery is in the *working* rather than in the *wording* of the plan. The exercise of ordinary common sense brings to us a realization of the incentives which motivate ordinary human conduct, and makes it conclusive in our minds that the very things the statute intended to prevent are not to be permitted to exist because of the name which is placed thereon.

The judgment is reversed and the cause remanded, with directions to enter the writ of injunction sought by plaintiff.

RILEY, BAYLESS, WELCH, and HURST, JJ., concur. GIBSON, V. C. J., and OSBORN, DAVISON, and ARNOLD, JJ., dissent.

———

ARNOLD, J. (dissenting). In my opinion where, as here, the operator of a theatre provides a registry in the outside foyer of the theatre and permits anyone, whether paid attendant of the show or not, to register free of charge and issues to each applicant what is termed a "box office insurance policy" and on designated nights one policy is selected by chance and redeemed without the holder having to purchase a ticket or be present in the theatre at the time of drawing, the holder having the right to appear in a reasonable time to claim such award, the scheme is not a lottery within the purview of 12 O. S. 1941 § 1051.

Section 1051, supra, provides in part as follows:

"A lottery is any scheme for the disposal or distribution of property by chance among persons *who have paid, or promised, or agreed to pay any valu-*

*able consideration for the chance of obtaining such property* or portion thereof, or for any share of or interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, a raffle, or a gift enterprise, or by whatever name the same be known."

There are three essential elements in a lottery: (1) The offering of a prize (present in this case), (2) the awarding of the prize by chance (also present in this case), and (3) the giving of a consideration or promising or agreeing to pay a consideration for an opportunity to win the prize (not present in this case).

Where a cash prize is given to the person whose name is drawn from a list of registrants or to the person who holds a number drawn by chance, such is not a lottery regardless of the profit derived by the operator through increased attendance where neither the registrants nor the winners are required to purchase admission tickets to the picture show; voluntary attendance at the drawing outside the theatre does not constitute consideration for the chance; something of value must be paid and hazarded by the registrant to supply the element of consideration. See People v. Cardas, 136 Cal. A. 80, 28 P. 2d 99; Affiliated Enterprises, Inc., v. Rock-Ola Mfg. Corp., 23 Fed. Supp. 3; State v. Eames, 87 N. H. 477, 183 Atl. 590; State v. Hundling, 220 Iowa, 1369, 264 N. W. 608, 103 A. L. R. 861; State v. Horn (N. J.) 1 Atl. 2d 51; Darlington Theatres v. Coker, 190 S. C. 282, 2 S. E. 2d 782; People v. Psallis, 12 N. Y. 2d 796, and other cases.

I think that the scheme in question amounts to nothing more than an advertising method which does not involve the elements of gambling and is not any more vicious than many admittedly lawful advertising practices to stimulate lawful business.

I, therefore, respectfully dissent.

I am authorized to say that GIBSON, V. C. J., and OSBORN and DAVISON, JJ., concur in the views herein set forth.