Dear District Attorney Stocker:
¶ 0 This office has received your request for an Attorney General Opinion regarding, in effect, the following question:
 Do "casino nights" operated by a non-profit, charitable organization, such as a church, school, chamber of commerce, fraternal organization or social club, violate either the general anti-gambling laws of Oklahoma, 21 O.S. 1991 and Supp. 1994, §§ 941, et seq., or the State anti-lottery laws, 21 O.S. 1991 and Supp. 1994, §§ 1051, et seq., where: (a) Patrons gain entry to the "casino night" by purchasing a ticket; (b) In exchange for their admission fee, all participants receive a set amount of play money or chips to be used in playing the various games at casino night; (c) Additional play money or chips may be purchased at extra cost; (d) Usually, a time period during the evening is established for the playing of various casino games, such as roulette, craps, black jack, etc.; (e) At an appointed time casino play ceases and participants exchange their winnings for vouchers or receipts reflecting a dollar amount of their winning, and an auction is then conducted at which the receipts or voucher amounts are used to bid on various prizes, with the prizes being awarded to the highest bidder?
 I. CASINO NIGHTS VIOLATE OKLAHOMA'S ANTI-GAMBLING LAWS
¶ 1 The criminal statutes of Oklahoma prohibit almost every form of gambling. The statutes prohibit "poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credit, or any representatives of value. . . ." 21 O.S.Supp. 1994, § 941[21-941].
¶ 2 Also prohibited is the placing of any bet or the playing of any game whatsoever for money, property, checks, credit, or other representatives of value with cards, dice or any other device which may be adopted to, or used in playing any game of chance or in which chance is a material element. 21 O.S. 1991, § 942[21-942].
¶ 3 Persons who permit gambling in their building or on their grounds, or knowingly lease their property for such purposes, are also guilty of a crime. 21 O.S. 1991, §§ 956[21-956] and 957. Such leases are declared void under Oklahoma law. 21 O.S. 1991, §958[21-958]. The criminal statutes of Oklahoma also provide that operating any house, room, or place where any of the prohibited games are conducted or carried on is a felony. 21 O.S. 1991, §946[21-946].
¶ 4 Oklahoma's pervasive anti-gambling public policy is further demonstrated by the stiff penalty imposed upon any state, district, city, town or county officer who engages or participates in or assists or encourages any other person in any kind of gambling. Law enforcement officers who violate the anti-gambling laws commit a felony punishable by fines up to $10,000.00 and imprisonment for up to ten (10) years; furthermore, upon conviction, those officers immediately forfeit their office and are forever disqualified from holding any office of profit or trust in the State of Oklahoma. 21 O.S.Supp. 1994,§ 948[21-948].
¶ 5 Similarly, district attorneys, sheriffs, constables, police officers and all other peace officers and law enforcement officers are required to enforce the anti-gambling laws of Oklahoma. Any officer who knowingly or willingly neglects or fails to enforce the anti-gambling laws of Oklahoma is subject to removal from office and, upon conviction, is disqualified from holding any office of trust or profit in the State of Oklahoma for two years. 21 O.S. 1991, § 949[21-949].
¶ 6 Additionally, "commercial gambling" is specifically prohibited. 21 O.S. 1991, §§ 981-988[21-981-988]. While charitable associations, which meet various statutory criteria, may under the Oklahoma Charity Games Act, 3A O.S.Supp. 1994, §§ 401[3A-401], etseq., conduct "charity games," the charity games authorized under that Act only include bingo games, U-PIK-EM bingo games, and breakopen ticket games. 3A O.S.Supp. 1994, § 402[3A-402](6).
¶ 7 The "casino night" games you refer to are clearly prohibited by Oklahoma's anti-gambling laws. The games to be played are specifically prohibited by 21 O.S.Supp. 1994, § 941[21-941],
which provides:
 Except as provided in the Oklahoma Charity Games Act, every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value, or who either as owner or employee, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine of not less than Five Hundred Dollars ($500.00), nor more than Two Thousand Dollars ($2,000.00), and by imprisonment in the State Penitentiary for a term of not less than one (1) year nor more than ten (10) years.
(Emphasis added.)
¶ 8 The statute specifically prohibits the operation of roulette, craps, or any banking or percentage game, or any gambling game played with dice, cards, or any device, for money, checks, credits or any representatives of value. The very games mentioned in your request, roulette, craps, black jack, etc., are prohibited under the statute. At a "casino night," patrons must purchase chips or paper money by either buying an admission ticket, and/or buying additional chips or money in order to play the games. The winnings at the games are tallied at the end of play, and the chips and/or paper money are converted into vouchers or similar credits — which represent real value — as they may be used to purchase prizes in the subsequent auction. The fact that the games are played with chips or paper money does not remove the games from the statute's prohibitions. The statute very carefully prohibits such games when played for money, checks or credit, or "any representatives of value." In the "casino night" transaction you describe, the games are played for chips or paper money, which are converted into representatives of value which may be used to purchase prizes at auction, and the participant pays consideration — money — to be able to play the various games of chance, and in playing those games, have a chance to win "representatives of value." Such transactions are prohibited by the provisions of 21 O.S.Supp. 1994, § 941[21-941].
Additionally, the use of buildings and land to conduct such games is prohibited by the provisions of 21 O.S. 1991, §§ 945[21-945], 946, and 956.
¶ 9 Such transactions also violate Oklahoma's anti-commercial gambling statutes. The anti-commercial gambling statutes of Oklahoma define commercial gambling to include "[o]perating or receiving all or part of the earnings of a gambling place." 21O.S. 1991, § 982[21-982](A)(1). A "gambling place" is defined by the act to include "any place, room, building, vehicle, tent or location which is used for any of the following: making and settling bets; . . . or playing gambling devices." 21 O.S.Supp. 1994, §981[21-981](4). The anti-commercial gambling statutes define a "bet" as "a bargain in which the parties agree that, dependent upon chance, or in which one of the parties to the transaction has valid reason to believe that it is dependent upon chance, one stands to win or lose something of value specified in the agreement." 21 O.S.Supp. 1994, § 981[21-981](1). While a "bet" does not include charity games conducted pursuant to the Oklahoma Charity Games Act, 3A O.S.Supp. 1994, §§ 401[3A-401], et seq., as we have seen above, the Oklahoma Charity Games Act only authorizes various bingo and break-open games. None of these excluded games are involved in your inquiry.
¶ 10 Also excluded from the definition of "bet" are:
 c. offers of purses, prizes or premiums to the actual participants in public and semipublic events, as follows, to wit: Rodeos, animal shows, expositions, fairs, athletic events, tournaments and other shows and contests where the participants qualify for a monetary prize or other recognition. This subparagraph further excepts an entry fee from the definition of "a bet" as applied to enumerated public and semipublic events.
21 O.S.Supp. 1994, § 981[21-981](1)(c) (emphasis added).
¶ 11 This exclusion from the definition of "bet" in no way removes "casino nights" from the prohibitions of either the anti-commercial gambling statutes, or anti-gaming statutes. First, the "casino nights" you refer to are not events such as rodeos, animal shows and expositions, referred to in the statute, nor is a casino night admission fee an "entry fee," to participate in such an event. Second, the "casino nights" you describe are not similar to someone paying an entry fee in order to enter a rodeo where the participant might win prizes. The "casino nights" involve people sitting down with gaming devices, placing bets on the outcome of roulette, black jack, craps, and similar games, and do not involve the participants in endeavors such as rodeos, animal shows, or participating in a competition.
¶ 12 Thus, in addition to violating the anti-gambling provisions of 21 O.S. 1991 and Supp. 1994, §§ 941 et seq.,
the "casino nights" which you describe also violate the anti-commercial gambling laws found at 21 O.S. 1991 and Supp.1994, §§ 981 et seq.
 II. "CASINO NIGHTS" VIOLATE OKLAHOMA'S ANTI-LOTTERY LAWS
¶ 13 Under the provisions of 21 O.S. 1991, § 1052[21-1052], "[e]very lottery is unlawful, and a common public nuisance." Lottery is defined at 21 O.S. 1991, § 1051[21-1051], in pertinent part as follows:
 A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid, or promised, or agreed to pay any valuable consideration for the chance of obtaining such property, or a portion of it, or for any share of or interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by a lot or chance,
whether called a lottery, a raffle, or a gift enterprise, or by whatever name the same may be known. Valuable consideration shall be construed to mean money or goods of actual pecuniary value.
(Emphasis added.)
¶ 14 The Oklahoma Supreme Court in interpreting this statute has, on numerous occasions, held that a lottery is "any scheme for disposal or distribution of money or property by chance, among persons who have paid, promised to pay any valuable consideration for the chance of obtaining such property." E.g.,Knox Industries Corp. v. State, 258 P.2d 910 (Okla. 1953), andState v. Lynch, 137 P.2d 949 (Okla. 1943). In the Lynch case, the Supreme Court held that there are three elements necessary for a lottery:
 Three elements are always necessary for a scheme to be held to be a lottery, namely: (1) Prize; (2) chance; (3) consideration. . . . If any one of these elements is not present as an integral part of the scheme, then no lottery exists.
137 P.2d at 953 (emphasis added and cites omitted).
¶ 15 The "casino night" transactions you describe have all three of these necessary elements:
 (1) Consideration is present in the form of the admission fee paid, and the additional fee paid for additional chips or paper money;
 (2) Chance is provided by the games of chance themselves; and
 (3) Prize is present in the form of the prizes obtained with the chips, paper money or other credits or vouchers reflecting the participant's winnings.
¶ 16 In concluding that all three elements of a lottery are present in "casino nights," we specifically conclude that the element of chance is not eliminated simply because the prizes are obtained through an auction, for at the auction it is the winnings from the games of chance — once converted into credits or vouchers — that are used to obtain the prizes. Additionally, we conclude that the anti-fraud provisions of the Amusement and Carnival Games Act do not change the illegal nature of "casino nights."
¶ 17 The Amusement and Carnival Games Act, 3A O.S.Supp. 1994,§§ 501[3A-501], et seq., prohibits operators of amusement and carnival games from engaging in various fraudulent practices, including "any hidden mechanical device, deception or deceptive objects, manipulation, sleight-of-hand, trickery, obstruction, randomly selected or enforced rules, whether posted or verbalized, or by any other fraudulent means with intent to diminish or defeat the opportunity of any patron or player to win a prize or accomplish the intended object of the game. . . ." 3A O.S.Supp. 1994, §502[3A-502](A). The intent of that Act was to prohibit operators of amusement and carnival games from conducting these and other fraudulent schemes, and was not to repeal, by implication, Oklahoma's anti-gambling statutes, or expand the scope of permissible gambling in Oklahoma. Thus, that Act did not legalize the "casino night" transactions you describe.
¶ 18 It is therefore the official opinion of the AttorneyGeneral that:
 "Casino nights" operated by a non-profit, charitable organization, where: (a) patrons pay to be admitted, and as part of their admission fee, receive chips or paper money to be used to play various casino games, such as roulette, black jack and craps; (b) patrons may pay an additional fee to receive additional chips and paper money; (c) at the conclusion of the games, all patrons are issued credits or vouchers based on the chips or paper money they have won; (d) and an auction is then conducted, at which patrons use their credits to purchase prizes, violate the general anti-gambling laws of Oklahoma, 21 O.S. 1991 and Supp. 1994, §§ 941, 942, 945, 946, and 956; violate the anti-commercial laws of Oklahoma, 21 O.S. 1991, §§ 982[21-982], 983, and 985, and also violate the anti-lottery laws of Oklahoma, 21 O.S. 1991 and Supp. 1994, §§ 1051, et seq.[1]
 W.A.DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL
[1] In your inquiry, you asked us to consider the legality of a specifically described "casino night." In responding we have concluded that the specifically described "casino night" violated many of Oklahoma's anti-gambling and anti-lottery laws. Our conclusion should not, however, be read to suggest that a "casino night" operated slightly differently would not violate these laws. Indeed, as our analysis above demonstrates, most every enterprise — no matter how operated — which combines the elements of chance, consideration and prize is prohibited.