Question Submitted by: Rollo D. Redburn, Executive Director, Oklahoma Lottery Commission
2017 OK AG 2
Decided: 05/04/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 2, __ __

 
¶0 This office has received your request for an Official Attorney General Opinion in which you ask, in effect, the following questions:
1. May the Oklahoma Lottery Commission, pursuant to authority granted under the Oklahoma Education Lottery Act, accept entries for promotional second-chance drawings through an internet-based web application?
2. May the Oklahoma Lottery Commission, pursuant to authority granted under the Oklahoma Education Lottery Act, offer a sweepstakes promotion and, if so, may the Commission accept entries through an internet-based web application?
I.
Introduction
A. Oklahoma public policy with regard to gambling.
¶1 To answer your questions, we must first consider the legality of gambling generally, and lotteries in particular, in the State of Oklahoma. In this State, it is illegal to conduct or participate in most forms of gambling, including poker, roulette, craps, and other card and dice games. See 21 O.S.2011, §§ 941, 942. Commercial gambling[1] is also prohibited. Id. § 982. In fact, even the dissemination of gambling information--defined as the "transmitting or receiving, by means of any communication facilities, information to be used in making or settling bets"--is illegal in Oklahoma. Id. § 987.
¶2 As noted extensively in previous Attorney General Opinions, these broad prohibitions on gambling-related conduct, while subject to certain narrow exceptions, illustrate the State's "pervasive anti-gambling public policy." A.G. Opin. 02-25, ¶1; A.G. Opin. 01-54, ¶2 (same); A.G. Opin. 95-6, ¶4 (citing the "stiff penalty" for law enforcement officers who fail to enforce gambling laws as evidence of the State's strict public policy); A.G. Opin. 93-1, ¶45 (same). Based on this clear public policy, "we begin any analysis of the legality of a gambling activity in Oklahoma with the understanding that all gambling, unless specifically permitted, is illegal." A.G. Opin 02-25, ¶1; A.G. Opin. 01-54, ¶2. 
¶3 This strict interpretation informs our analysis of gambling activities themselves as well as proposals to expand participation in, or the availability of, gambling activities that are specifically permitted already. For instance, in a pair of Attorney General Opinions we considered questions regarding the expansion of pari-mutuel wagering on horse races, a gambling activity that is specifically permitted for on-track races and off-track simulcast races pursuant the Oklahoma Horse Racing Act (3A O.S.2011 & Supp.2016, §§ 200 - 209). In Attorney General Opinion 2001-54, we were asked whether the Oklahoma Horse Racing Commission could permit a licensed racetrack to accept pari-mutuel wagers on previously-run races. Because the statute specifically provided only for wagering on live or simulcast races, we concluded that the Commission lacked authority to permit wagering on previously-run races. See A.G. Opin. 01-54, ¶¶21-23. In Attorney General Opinion 2002-25, we were asked whether pari-mutuel wagers could be placed via telephone or internet. The statute permitted pari-mutuel wagering only at licensed racetracks and designated off-track facilities, so we concluded that wagers placed by telephone or over the internet would be illegal under Oklahoma law. See A.G. Opin. 02-25, ¶25. 
B. Lottery regulation in Oklahoma and the Oklahoma Education Lottery Act.
¶4 For the purposes of Oklahoma gambling laws, a lottery is broadly defined as:

[A]ny scheme for the disposal or distribution of property by chance among persons who have paid, or promised, or agreed to pay any valuable consideration for the chance of obtaining such property, or a portion of it, or for any share of or interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by a lot or chance, whether called a lottery, a raffle, or a gift enterprise, or by whatever name the same may be known.

21 O.S.2011, § 1051(A). 
¶5 The Oklahoma Supreme Court has distilled this definition into three elements, all of which must be present for a game to be deemed a lottery: (1) a prize, (2) chance, and (3) consideration. See State ex rel. Draper v. Lynch, 1943 OK 215, ¶ 28, 137 P.2d 949, 953.
¶6 Generally speaking, lotteries are prohibited in Oklahoma.[2] However, a lottery conducted pursuant to the Oklahoma Education Lottery Act (the "Lottery Act" or "Act") is an exception that is expressly permitted.[3] 21 O.S.2011, § 1051(A)(1). Enacted in 2003,[4] the Lottery Act created the Oklahoma Lottery Commission (the "Commission") to operate a state-run lottery to raise funds for improving education in Oklahoma. See 3A O.S.2011, § 702. While the lottery is operated by the Commission, the Commission is overseen by a board of trustees (the "Board") that is responsible for promulgating rules to regulate the Commission's lottery games. Id. §§ 705(A), 707(4). The rules may specify, among other things, the types of lottery games to be conducted, ticket prices, and the number and amount of prizes. Id. § 710.
¶7 The Board has promulgated rules for two types of lottery games: instant games and online games. See OAC 429:15-1-1 et seq. (instant games) & 429:20-1-1 et seq. (online games). Instant games, known as scratchers, are "played by revealing a hidden play area on [the] ticket to display the play symbols." OAC 429:15-1-2. Instant games do not involve a drawing to win a prize; instead, winning tickets are predetermined and revealed when the player removes the covering on the hidden play area. See OAC 429:15-1-5. Online games,[5] on the other hand, are won by matching numbers on a particular ticket to numbers that are subsequently drawn by the Commission. See OAC 429:20-1-5. Players of online games may choose their own numbers or have them selected at random by computer. See OAC 429:20-1-2.
¶8 Entries for instant and online games may be purchased only from Commission-authorized retailers at Commission-approved locations. See 3A O.S.2011, § 723; see also OAC 429:15-1-4(a), 20-1-4(a). The Commission itself may also sell tickets directly to the public. See 3A O.S.2011, § 709(11). Purchases must be made in cash and purchasers must be at least 18 years old. Id. §§ 710(2), 723(D). Sales that do not conform to these requirements violate the Lottery Act and are void. Id. § 724(D).
II.
Discussion
A. Second-Chance Promotions.
¶9 According to your opinion request, the Commission occasionally offers a second-chance drawing as a promotion to generate interest in selected lottery games.[6] Our understanding is that second-chance promotions allow participants to submit non-winning lottery tickets or promotional slips[7] as entries in a drawing to win a secondary prize. To participate, a player enters certain information on the ticket or slip and sends it to the Commission via U.S. mail. In an effort to modernize this process, the Commission wishes to accept entries for second-chance drawings through an internet-based web application found on its website. 

1. Under Oklahoma law, a second-chance promotion is a lottery and thus a form of gambling that is illegal unless specifically permitted.

¶10 While a second-chance drawing is played only as a promotional add-on to instant or online games, it is also a lottery in and of itself. As noted above, a lottery is any scheme that combines a prize, chance and consideration. See Draper, 1943 OK 215, ¶28, 137 P.2d at 953; see also 21 O.S.2011, § 1051(A) (defining "lottery" under Oklahoma law). The first two of these elements are plainly present in a second-chance drawing: winning entries are drawn at random and the winner receives a prize. 
¶11 While the issue of consideration is less obvious, we find that element to be present as well. In general, consideration is present whenever "there is any benefit to the promisor or detriment to the promisee[.]" Powers Restaurants, Inc. v. Garrison, 1970 OK 30, ¶8, 465 P.2d 761, 764; see also Burkhardt v. City of Enid, 1989 OK 45, ¶13, 771 P.2d 608, 611 ("Consideration may be measured by benefit to one party or by forbearance, detriment, loss or responsibility assumed by the other party."). The statute that prohibits lotteries construes "valuable consideration" to mean "money or goods of actual pecuniary value," 21 O.S.2011, § 1051(A), while the commercial gambling statute defines consideration as "anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant." Id. § 981(2).
¶12 In the case of lottery games, payment of the ticket price is the consideration for the opportunity to win the prize. However, when a lottery game includes a second-chance promotion, the purchase price serves as consideration for two opportunities: the opportunity to win the lottery game itself and the opportunity to win the second-chance drawing. That a single consideration can be given in exchange for multiple objects or promises is a well-established principle of contract law. See Restatement (Second) of Contracts § 80 cmt. a (1981) ("Since consideration is not required to be adequate in value, two or more promises may be binding even though made for the price of one."); see also 15 O.S.2011, § 109 (recognizing that a single consideration may be given for more than one object); Greenshields v. Warren Petroleum Corp., 248 F.2d 61, 69 (10th Cir. 1957) (concluding that under Oklahoma law "[i]t is fundamental contract law that a single consideration may support as many promises as are bargained for and given in exchange."). Thus, with all three elements present, we must analyze a second-chance promotion as a lottery.

2. While a second-chance promotion is a form of gambling, it is specifically permitted by the Lottery Act and rules promulgated by the Board.

¶13 Consistent with our prior opinions, we begin our analysis "with the understanding that all gambling, unless specifically permitted, is illegal." A.G. Opin. 02-25, ¶1; A.G. Opin. 01-54, ¶2. Because second-chance promotions are themselves a form of gambling, we must determine whether they are specifically permitted by law. If they are not, we need not consider the follow-up question of whether entries may be accepted over the internet.
¶14 As explained above, the Lottery Act contemplates initiation of a state-run lottery consisting of games that are conducted according to rules promulgated by the Board and administered by the Commission and its Executive Director. See 3A O.S.2011, §§ 702, 707(4), 709(A), 710 & 711(A). A stated purpose of the lottery is to "maximize[] net proceeds available for educational purposes and programs." Id. § 702(3). Accordingly, the Act empowers the Commission and its Executive Director to advertise and promote the lottery, id. §§ 709(A)(10), 711(A)(3), and specifically authorizes the Commission to "conduct promotions which involve the dispensing of lottery tickets[,]" id. § 709(A)(11). See also id. § 717(E)(2)(g) (providing that certain retailer restrictions "shall not preclude the Commission from selling or giving away lottery tickets or shares for promotional purposes").
¶15 Relatedly, along with promulgating rules for the conduct of certain lottery games, the Board has provided by rule for the offering of promotions in connection with those games. See OAC 429:15-1-14 (procedures for instant game promotions); 429:20-1-17 (procedures for online game promotions). The rules require procedures for each individual promotion to be made available in a Board-approved format that includes, among other things, the name of the promotion, play style, method of entry, and retail sales price (if any). Id. The rules also require the Commission to set forth in writing the drawing procedures for certain promotions. See OAC 429:20-1-9.
¶16 Based on the foregoing, we conclude that second-chance promotions are specifically permitted. The Act authorizes the Commission to promote its lottery games, and explicitly contemplates that some promotions may involve the sale or other dispensing of lottery entries themselves. 3A O.S.2011, § 709(A)(10-11). As described in your request, second-chance promotions are tied to the sale of entries for other lottery games and serve as a means of encouraging participation in those games. In our view, this falls squarely within the Commission's statutory authority to promote the lottery. 

3. The Commission is not specifically permitted to accept entries for second-chance promotions via internet-based web application. 

¶17 Having found that the Commission is permitted to conduct second-chance drawings as promotions for its other lottery games, we next consider whether the Commission may accept entries for such promotions via internet-based web application. In so doing, we follow the analysis set forth in Attorney General Opinion 2002-25, discussed in Section (I)(A) supra, which considered whether the Oklahoma Horse Racing Act permitted pari-mutuel wagers to be placed via telephone or internet. While pari-mutuel wagers were statutorily permitted, the statute did not explicitly permit them to be submitted by telephone or the internet. Accordingly, we concluded that those methods of placing pari-mutuel wagers were prohibited. See A.G. Opin. 02-25, ¶7. 
¶18 Turning to your question, the Lottery Act does not expressly allow lottery or promotional game entries to be purchased or submitted over the internet. To the contrary, the Act would appear to disallow internet-based entries, as it explicitly requires ticket sales to be in-person transactions. See 3A O.S.2011, § 723(C) (retailer sales permitted only at retail locations); id. § 709(A)(11) (Commission sales permitted at a sales facility operated by the Commission). Moreover, while the Board has some authority to promulgate rules regarding "the sale price of tickets or shares and the manner of sale," the Act requires all such sales to be "for cash only." Id. § 710(2). Indeed, there are no provisions in the Lottery Act that expressly permit any part of a lottery game transaction to be conducted over the internet. 
¶19 To be sure, restrictions on the method of purchase of lottery entries do not necessarily equate to restrictions on the methods of entry for lottery promotions. On this point, we recognize that the Commission is not asking whether the entries may be purchased over the internet, but whether, once purchased, promotional entries may be submitted to the Commission over the internet. However, in the absence of clear legal authority we must follow the presumption that gambling activities, including the transmission or receipt of information used to make bets "by means of any communications facilities," see 21 O.S.2011, § 987 (emphasis added), are illegal unless specifically permitted by law. See A.G. Opin. 02-25, ¶25; A.G. Opin. 01-54, ¶¶21-23. 
¶20 Because the Commission is not specifically authorized to accept lottery game or promotion entries over the internet, the Commission may not accept entries for promotional second-chance drawings through an internet-based web application.
B. Sweepstakes Promotions.
¶21 Your second question asks (1) whether the Commission may offer a sweepstakes promotion and (2) whether entries may be submitted through an internet-based web application. According to your description of the promotion, individuals could obtain a sweepstakes entry slip in connection with the purchase of their ticket. Alternatively, individuals not wishing to purchase a lottery ticket could obtain a free sweepstakes entry by written request to the Commission accompanied by a self-addressed, stamped envelope. At the end of the promotion, the Commission would draw a winner at random from the submitted entries.

1. Under Oklahoma law, a sweepstakes promotion is a lottery and thus a form of gambling.

¶22 Like the second-chance promotion, the sweepstakes promotion you describe amounts to gambling, and is therefore subject to the presumption that it is illegal unless specifically permitted. With respect to sweepstakes entries obtained in conjunction with the purchase of other lottery game entries, we reach this conclusion for the same reasons set forth in Section (II)(A)(1) supra. Specifically, for these participants the sweepstakes involves a prize, the element of chance, and dual consideration in the form of payment for the lottery tickets that allow the participant a free sweepstakes entry. See Draper, 1943 OK 215, ¶28, 137 P.2d at 953.
¶23 For individuals who obtain a "free" sweepstakes entry via written request to the Commission accompanied by a self-addressed, stamped envelope, the analysis is slightly different. This scenario raises the question of whether a nominally free entry negates the presence of consideration. 
¶24 To answer this question, we look to Attorney General Opinion 2009-24, which addressed the issue of whether a phone card sweepstakes machine was a "slot machine" under Oklahoma's gambling laws. For a single price, the machines at issue both dispensed phone cards and allowed the purchaser to play slot machine type games for prizes. See A.G. Opin. 2009-24, ¶1. However, some vendors offered to send a "free play" credit to individuals who mailed a self-addressed, stamped envelope to a specified address. Id. 
¶25 After concluding that the machines were slot machines prohibited by Oklahoma's gambling laws, we noted that vendors could not avoid this result by offering a "free play" option. First, we reasoned that just because "on occasion a 'free' play is permitted does not negate the fact that many players deposit money in the machines, nor does it change the nature and characteristics of the machine." Id. ¶15. Other jurisdictions have reached similar conclusions based on this reasoning. See Tex. Atty. Gen. Op. JM-513 (1986) ("[T]he fact that one person receives a chance to win for free while another person 'pays' for the chance does not negate the fact that someone in the contest has paid consideration for the chance to win[.]"); see also Ark. Op. Atty. Gen. No. 2006-052 (June 28, 2006) ("[A] 'Free Entry' method does not necessarily make the 'promotional scheme' legal[.]"). 
¶26 Second, we noted that to obtain the free entry, players were required to mail a request to the vendor, along with a self-addressed, stamped envelope that the vendor would use to return the free entry form to the player. See A.G. Opin. 2009-24, ¶14. In this scenario, we estimated that a player would spend approximately 94 cents on envelopes and postage for a one-play credit that would otherwise cost a dollar. Id. Accordingly, obtaining the "free" entry did impose a cost on the participant, even if nominal. 
¶27 Consistent with this reasoning, we find that notwithstanding the free entry option, the sweepstakes promotion is still a lottery under Oklahoma law. First, the availability of free entries does not alter the overall character of the sweepstakes, which serves to encourage participation in lottery games and likely finds the majority of its participants through that method of entry. Second, as with the free plays for the phone card sweepstakes machine, the "free" entry actually requires an individual to pay the costs of postage and envelopes to obtain the entry. The fact that those costs are relatively small and not paid to the Commission itself is not relevant for purposes of consideration. As noted above, consideration includes, for instance, "anything which isa disadvantage to any participant." 21 O.S.2011, § 981(2); see also Burkhardt, 1989 OK 45, ¶13, 771 P.2d at 611 ("Consideration may be measured by benefit to one party or by forbearance, detriment, loss or responsibility assumed by the other party." (emphasis added)).
¶28 With all three elements present we must analyze a sweepstakes promotion as a lottery.

2. A sweepstakes promotion is specifically permitted by the Lottery Act and Board rules, but the Commission is not specifically permitted to accept entries for such promotions via internet-based web application.

¶29 For the same reasons we concluded that the Commission is specifically permitted to conduct second-chance promotions, it is also specifically permitted to conduct sweepstakes promotions. See Section (II)(A)(2) supra. Namely, the Lottery Act authorizes the Commission to promote its lottery games and explicitly contemplates that some promotions may involve the sale or other dispensing of lottery entries. See 3A O.S.2011, § 709(A)(11). Moreover, the Board has promulgated rules to guide the promotion procedures followed by the Commission. See OAC 429:15-1-14, 20-1-17.

¶30 Likewise, we conclude that the Commission is not specifically permitted to accept sweepstakes entries over the internet for the reasons set forth in Section (II)(A)(3) supra. Because the Commission is not specifically authorized by law to accept lottery game or promotion entries over the internet, the Commission may not accept entries for sweepstakes promotions through an internet-based web application.[8]

¶31 It is, therefore, the official Opinion of the Attorney General that:

1. The second-chance promotion described in your request is a lottery under 

21 O.S.2011, § 1051(A) because it combines a prize, chance, and consideration, but is expressly permitted as a promotion under the Oklahoma Education Lottery Act, 3A O.S.2011 & Supp.2016, §§ 701 - 735, and rules promulgated thereunder.
2. The Oklahoma Lottery Commission may not accept entries for second-chance promotions through an internet-based web application because the Commission is not specifically permitted by law to accept such entries over the internet.
3. The sweepstakes promotion described in your request is a lottery under 21 O.S.2011, § 1051(A) because it combines a prize, chance, and consideration, but is expressly permitted as a promotion under the Oklahoma Education Lottery Act, 3A O.S.2011 & Supp.2016, §§ 701 - 735, and rules promulgated thereunder.
4. The Oklahoma Lottery Commission may not accept entries for sweepstakes promotions through an internet-based web application because the Commission is not specifically permitted by law to accept such entries over the internet.

Mike Hunter
Attorney General of Oklahoma
Malisa McPherson
Assistant Attorney General 
FOOTNOTES
[1] Commercial gambling includes, among other things, (i) operating or receiving earnings from a gambling place, (ii) receiving, recording or forwarding bets or possessing facilities to do so, (iii) conducting a lottery or possessing facilities to do so, or (iv) owning, controlling, managing or financing a gambling business. 21 O.S.2011, § 982(A). 
[2] A lottery is one form of "commercial gambling" prohibited by 21 O.S.2011, § 982, but is also illegal in its own right. See 21 O.S.2011, § 1052 ("Every lottery is unlawful, and a common public nuisance."). 
[3] There are other limited exceptions to the State's lottery prohibition, but none are relevant to this Opinion. See 21 O.S.2011, § 1051(A)(2)-(4).
[4] See 2003 Okla. Sess. Laws ch. 58, § 2.
[5] The Lottery Act defines "online game" to mean "a game where tickets or shares are purchased through a network of computer terminals located at retail outlets, and such terminals are linked to a central computer that records the purchases." 3A O.S.2011, § 703(15). While the generic term "online game" is commonly associated with games played over the internet, the Board has clarified by rule that "online games" do not include internet-based games. See OAC 429:20-1-2. 
[6] Examples of past second-chance promotions can be reviewed at https://www.lottery.ok.gov/past_promotions.asp (last visited April 21, 2017).
[7] As described in your request, promotional entry slips for second-chance drawings are typically issued when a player purchases a minimum number of lottery game entries. 
[8] It is important to note that this prohibition applies only to promotions that independently qualify as a prohibited gambling activity. For promotions that do not amount to gambling--where a free giveaway negates the element of consideration, for instance--we offer no opinion as to permissible forms of entry.

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 45, 771 P.2d 608, 60 OBJ 785, 
Burkhardt v. City of Enid
Discussed at Length

 
1970 OK 30, 465 P.2d 761, 
POWERS RESTAURANTS, INC. v. GARRISON
Discussed

 
1943 OK 215, 137 P.2d 949, 192 Okla. 497, 
STATE ex rel. DRAPER v. LYNCH
Discussed at Length

Title 15. Contracts

 
Cite
Name
Level

 
15 O.S. 109, 
Illegality of Consideration
Cited

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 941, 
Gambling - Conducting - Penalty - Felony
Cited

 
21 O.S. 981, 
Definitions
Cited

 
21 O.S. 982, 
Commercial Gambling
Discussed

 
21 O.S. 987, 
Dissemination of Gambling Information
Cited

 
21 O.S. 1051, 
Lottery Defined - Exceptions
Discussed at Length

 
21 O.S. 1052, 
Lottery Unlawful and Public Nuisance
Cited

Title 3A. Amusements and Sports

 
Cite
Name
Level

 
3A O.S. 701, 
Short Title
Discussed

 
3A O.S. 702, 
Intent
Discussed

 
3A O.S. 703, 
Definitions
Cited

 
3A O.S. 709, 
Powers of the Oklahoma Lottery Commission and Board of Trustees
Discussed at Length

 
3A O.S. 723, 
Unlawful Sales of Lottery Tickets or Shares
Discussed

 
3A O.S. 200, 
Short Title
Cited